**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| GENAPSYS, INC.,[1] | Case No. 22-_____ (___) |
| Debtor. | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTOR TO (A) CONTINUE TO MAINTAIN ITS CASH**
**MANAGEMENT SYSTEM, INCLUDING BANK ACCOUNTS AND BUSINESS FORMS,**
**AND (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO;**
**(II) WAIVING (A) CERTAIN OPERATING GUIDELINES, AND (B) SECTION**
**345(b) DEPOSIT AND INVESTMENT REQUIREMENTS;**
**AND (III) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "<u>Debtor</u>") hereby files this motion (the "<u>Motion</u>") for the entry of interim and final orders, substantially in the forms attached hereto as <u>Exhibit A</u> (the "<u>Proposed Interim Order</u>") and <u>Exhibit B</u> (the "<u>Proposed Final Order</u>," and together with the Proposed Interim Order, the "<u>Proposed Orders</u>"), (i) authorizing, but not directing, the Debtor to (a) continue to maintain its existing cash management system, including bank accounts and business forms and (b) honor certain prepetition obligations related thereto; (ii) waiving (a) certain operating guidelines, and (b) the deposit and investment requirements of section 345(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"); and (iii) granting related relief. The Debtor also requests that the Court authorize all Banks (as defined below) to continue to maintain, service, and administer the Bank Accounts (as defined below). In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Britton Russell in Support of*

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is GenapSys, Inc. (3904). The Debtor's headquarters are located at 200 Cardinal Way, 3rd Floor, Redwood City, CA 94063.

*Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration").[2]  In further support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The statutory and legal predicates for the relief requested herein are sections 105, 345, 363, 1107(a), and 1108 of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2015-2.

## BACKGROUND

### I.    General

3.        On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  The Debtor is authorized to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in the

---

[2]    Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

Chapter 11 Case, and no request has been made for the appointment of a trustee or an examiner. Additional information regarding the Debtor's business, its capital structure, and the circumstances leading to the filing of the Chapter 11 Case is set forth in the First Day Declaration.

## II.    The Cash Management System

4.     In the ordinary course of business and prior to the Petition Date, the Debtor maintained a cash management system (the "Cash Management System") comprising 10 bank accounts (the "Bank Accounts") maintained at EastWest Bank ("EastWest") and Silicon Valley Bank ("SVB," and collectively with EastWest and any other bank at which the Debtor may hold accounts, the "Banks").

5.     As set forth on **Exhibit C** attached hereto, the Bank Accounts comprise the following active accounts:

  i. **Operating Account.**  The Debtor maintains an operating account at EastWest to manage cash receipts and disbursements in the ordinary course of business.

  ii. **Oxford Account.**  The Debtor maintains a blocked account at EastWest in the amount of approximately $2.15 million in compliance with that certain Forbearance Agreement dated as of June 1, 2022, entered into between the Debtor and the Prepetition Agent (the "Forbearance Agreement").  These funds used to be held in a certificate of deposit instrument.  Under the Forbearance Agreement, the Debtor was required to liquidate the CD Account and deposit the cash in the blocked Oxford Account.

  iii. **Money Market Accounts.**  The Debtor maintains three money market accounts, two of which are active.  Of the two active accounts, one is maintained at SVB and contains a current balance of approximately $200 as collateral for the Debtor's corporate credit card program.  The other is maintained at EastWest and holds a letter of credit in the amount of approximately $2 million required under the Debtor's Westminster, Colorado lease agreement.  A description of the third inactive Money Market Account is below in paragraph 8.

  iv. **Checking Account.**  The Debtor maintains two checking accounts, one of which is active.  The active Checking Account at SVB is used to pay the

Debtor's business credit card account.  A description of the third inactive Checking Account is below in paragraph 8.

6.        Additionally, as set forth on **<u>Exhibit C</u>** attached hereto, the Bank Accounts also include the following inactive accounts:

i.     **FSA Account.**  In the ordinary course of business, the Debtor maintained an account at EastWest that held funds in connection with the Debtor's FSA program.  The FSA Account was liquidated prior to the Petition Date and currently has a $0 balance.

ii.    **Receivable Account.**  In the ordinary course of business, the Debtor maintained an account at EastWest that was set up to receive accounts receivable.  The Receivable Account was liquidated prior to the Petition Date and currently has a $0 balance.

iii.   **Reserve Account.**  In the ordinary course of business, the Debtor maintained a checking account at EastWest.  The Reserve Account was liquidated prior to the Petition Date and currently has a $0 balance.  The Debtor expects to use this account to keep an adequate assurance deposit for the benefit of the Debtor's utility providers throughout the course of this Chapter 11 Case.

iv.    **Money Market Account.**  In connection with the Debtor's decision to enter into a lease agreement in Westminster, Colorado, the Debtor commenced the process of opening a third money market account at EastWest.  The process was never completed, and the account has a $0 balance.

v.     **Money Market Fund.**  In the ordinary course of business, the Debtor maintained a Money Market Fund Account at SVB.  The Money Market Fund Account was liquidated prior to the Petition Date, currently has a $0 balance, and has no funds invested in a Money Market Fund.

**III.    Bank Fees**

7.        In the ordinary course of its business, the Debtor incurs, pays, honors, or allows to be deducted from the appropriate Bank Accounts certain service charges and other fees, costs, and expenses charged by the Banks (collectively, the "<u>Bank Fees</u>").

8.        During the past twelve months, the Debtor paid on average approximately $500 in Bank Fees each month, excluding interest.  The Debtor estimates that approximately $1,000 in Bank Fees remain outstanding as of the Petition Date.

4

## IV.    Business Forms

9.      As part of the Cash Management System, the Debtor utilizes various business forms (the "Business Forms") in the ordinary course of its business.  To minimize expenses, the Debtor seeks authority to continue to use all Business Forms in substantially the form used immediately prior to the Petition Date, without reference to the Debtor's status as debtor in possession.  Given the limited scope of the Debtor's business operations, requiring the Debtor to change its existing Business Forms would unnecessarily distract the Debtor from its restructuring efforts and impose needless expense on the estate.

10.     In accordance with Local Rule 2015-2(a), to the extent that the Debtor exhausts its existing supply of checks during the Chapter 11 Case and requires new checks, the Debtor will update its checks to reflect the designation "Debtor in Possession" and the case number of the Chapter 11 Case; provided that with respect to checks that the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such items within ten business days of the date of entry of the Proposed Interim Order.

## RELIEF REQUESTED

11.     The Debtor seeks entry of the Proposed Orders, pursuant to sections 105, 345, 363, 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, (i) authorizing, but not directing, the Debtor to (a) maintain the Cash Management System, including Bank Accounts and Business Forms, and (b) honor prepetition obligations related thereto; (ii) waiving (a) certain operating guidelines related to the Bank Accounts, and (b) the deposit and investment requirements of section 345(b) of the Bankruptcy Code; and (iii) granting related relief.

RLF1 27605119v.1

12.     To enable the Debtor to carry out the relief requested, the Debtor also requests that the Court authorize the Banks to continue to service and maintain the Bank Accounts as accounts of the Debtor as debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, in accordance with the orders of this Court.

**BASIS FOR RELIEF**

**I.      Continued Use and Maintenance of the Cash Management System Is Warranted.**

13.     The Debtor maintains the Cash Management System in the ordinary course of its business operations, which allows it to administer its cash and financial affairs.  Maintenance of the Cash Management System is important for preserving and enhancing the value of the Debtor's business and for effectuating the proposed restructuring.

14.     As described herein, any disruption to the Cash Management System would have an immediate adverse impact on the Debtor's business and would impair the Debtor's ability to successfully administer the Chapter 11 Case.  Continued maintenance of the Cash Management System is necessary to, among other things, ensure that the Debtor may (a) honor obligations that accrued or any payments that were made or issued prepetition, but that remain outstanding as of the Petition Date, and (b) avoid any unnecessary interruption of its Cash Management System.  It would be time-consuming, difficult, and costly for the Debtor to establish an entirely new system of accounts and a new cash management system, and particularly impractical given that the Debtor anticipates a prompt exit from the Chapter 11 Case.  The attendant delays from revising cash management procedures, redirecting receipts and implementing new payment protocols would create unnecessary pressure on the Debtor while it works to meet the other administrative obligations imposed by chapter 11 of the Bankruptcy Code.

15.     Allowing the Debtor to utilize and maintain the Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business. See, e.g., In re Roth Am., Inc., 975 F.2d 949, 952 (3d Cir. 1992); see also In re Nellson Nutraceutical, Inc., 369 B.R. 787, 796 (Bankr. D. Del. 2007). Included within the purview of section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system. See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996).

16.     Courts in this district have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring affiliated debtors to maintain all accounts separately. Columbia Gas Sys., 997 F.2d at 1061; see also In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining an existing cash management system allows a debtor "to administer more effectively and efficiently its financial operations and assets").

17.     The Court may also exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see also In re Combustion Eng'g, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that

section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings") (citation omitted); In re Nixon, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad.") (citation omitted); In re Nortel Networks, Inc., 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to 'craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.'") (citations omitted).

18.     Accordingly, to minimize the disruption caused by the filing of the Chapter 11 Case and maximize the value of the Debtor's estate, the Debtor requests authority to continue to utilize the Cash Management System during the pendency of the Chapter 11 Case. The Cash Management System has been used by the Debtor for many years. Parties in interest will not be harmed by the Debtor's continued maintenance of the Cash Management System, including the Bank Accounts, because the Debtor will implement appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date. Specifically, with the assistance of its professionals and consistent with prior practice, the Debtor will continue to maintain detailed records of all transfers of cash, if any, and record all transactions on applicable accounts. Therefore, the Debtor should be permitted to continue to manage its cash and transfer funds among the Bank Accounts, if needed, in accordance with the Cash Management System.

## II.    The Court Should Authorize the Debtor to Maintain the Bank Accounts.

19.     The Office of the United States Trustee for the District of Delaware ("U.S. Trustee") has established several operating guidelines for chapter 11 debtors in possession (the

"U.S. Trustee Guidelines"), including a requirement that the debtor in possession open new bank accounts and close all existing accounts. This requirement was designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and to help protect against the inadvertent payment of prepetition claims. The U.S. Trustee Guidelines also require opening a separate operating account and a special tax payment account into which all funds that may be collected and/or payable during the pendency of a debtor's case will be deposited. This requirement is meant to provide cash collateral for, and ensure payment of, certain priority tax claims such as federal and state payroll taxes and sales taxes.

20.     To avoid disruption to the Debtor's operations, the Debtor requests that it be permitted to continue to maintain the existing Bank Accounts. Allowing the Debtor to maintain the Bank Accounts will assist the Debtor in accomplishing a smooth transition to operations under chapter 11.

21.     Moreover, the Debtor can distinguish between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones.

22.     In addition, all Banks with which the Debtor maintains Bank Accounts have been or are in the process of being advised not to honor checks, advises, drafts, or other requests for payment issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and as directed by the Debtor. Therefore, the goals of the U.S. Trustee Guidelines can be satisfied, and the Debtor's creditors can be protected, without closing the Bank Accounts.

23.     Although the Debtor is requesting a waiver of the requirement that it close all Bank Accounts, the Debtor may determine, in its business judgment, that opening new bank accounts and/or closing existing Bank Accounts is in the best interests of the estate. Nothing contained herein should prevent the Debtor from opening any additional bank accounts, or

RLF1 27605119v.1

closing any existing Bank Accounts, as it may deem necessary and appropriate in its sole discretion; provided, however, that the Debtor shall give notice of the opening or closing of any such bank account within fifteen (15) days to (a) the U.S. Trustee and (b) counsel to any statutory committee appointed in this Chapter 11 Case.  Any new bank account opened by the Debtor shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute a Uniform Depository Agreement.

24.    As part of the requested relief, the Debtor also seeks a waiver of the requirement to establish specific bank accounts for tax payments.  The Debtor's tax obligations can be paid out of the Bank Accounts, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the accounts, as set forth in the required reporting.  Moreover, the creation of a new debtor-in-possession account designated solely for tax obligations would be unnecessary and inefficient.

25.    In connection with the Cash Management System, the Debtor requests authorization to continue to pay, honor, or deduct from the appropriate account certain Bank Fees.  Payment of the Bank Fees will minimize disruption to the Debtor's operation and is therefore in the best interests of its estate.  Absent payment of the Bank Fees, the Banks might assert setoff rights against the funds in the Bank Accounts, freeze the Bank Accounts, and/or refuse to provide banking services to the Debtor.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor seeks authority, in its sole discretion, to pay and/or reimburse the Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

## III.    The Debtor Should Be Authorized To Use Existing Check Stock and Related Business Forms.

26.    Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

27.     As discussed above, the Debtor utilizes various Business Forms in the ordinary course of its business.  In order to minimize expenses to its estate, the Debtor requests authority to continue using its existing prepetition Business Forms without reference to its status as debtor in possession or any other alteration.  As noted above, most parties doing business with the Debtor undoubtedly will be aware of the Debtor's status as debtor in possession.  A failure to permit the Debtor to maintain and utilize its existing check stock and related Business Forms as set forth herein would: (i) disrupt the ordinary financial affairs and business operations of the Debtor; (ii) delay the administration of the Debtor's estate; (iii) compromise the Debtor's internal controls and accounting system; and (iv) require the estate to unnecessarily spend money to create new Business Forms.  Accordingly, the requested relief is warranted under the circumstances.

## IV.    The Court Should Authorize Applicable Banks to Continue to Service and Administer the Debtor's Bank Accounts.

28.     In connection with the foregoing, the Debtor respectfully requests that the Court authorize all applicable Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor, as debtor in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized (i) to receive, process, honor, and pay all checks and transfers issued by the Debtor in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition

11

Date; (ii) provide that all Banks may rely on the representations of the Debtor with respect to whether any check or transfer issued or made by the Debtor before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtor provided for herein); and (iii) authorize the Debtor to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

29.     The Debtor respectfully requests that the Court authorize the Banks receive, process, honor, and pay any and all checks, automated clearing house payments ("ACH Payments") and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, whether such checks, drafts, wires, or ACH Payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; provided, however, that any check, advise, draft, or other notification that the Debtor advised the Banks to have been drawn, issued, or otherwise presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

30.     The Debtor also requests that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion either (i) at the direction of the Debtor; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtor, its estate or any other party on account of such prepetition check or other item honored postpetition.

31.     Both as part of this Motion and in other motions that have been concurrently filed, the Debtor is requesting authority, but not direction, to pay certain prepetition obligations. With respect to some of these obligations, the Debtor may have issued checks prior to the Petition Date that have yet to clear the banking system. In other instances, the Debtor will create the relevant check once the Court enters an order permitting the Debtor to do so. The Debtor intends to inform the Banks which such checks should be so honored. Therefore, the Debtor requests that the Banks be authorized to rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored. The Debtor respectfully submits that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

**V.     Cause Exists to Grant Waiver of Section 345(b) to Allow the Debtor to Continue to Maintain Its Cash Management System Without the Need to Post a Bond or Provide Other Security.**

32.     Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment made by a debtor, except those insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States, must be secured by a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the U.S. Trustee or by the deposit of securities of the kind specified in 31 U.S.C. § 9303. See 11 U.S.C. § 345(b). Section 345(b) provides further, however, that a bankruptcy court may allow the use of alternatives to these approved investment guidelines "for cause." Id.; see also In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). Moreover, Local Rule 2015-2 provides that, if a motion for waiver of the section 345 requirements is filed on the first day of a chapter 11 case, the Court may grant

an interim waiver of the section 345 requirements until such motion is heard. <u>See</u> Local Rule 2015-2.

33.     The Debtor believes that it is in substantial compliance with the requirements of section 345(b) of the Bankruptcy Code given that (i) all of the Bank Accounts are maintained at institutions that are counterparties to a Uniform Depository Agreements ("<u>UDA</u>"). As noted, to the extent the Debtor seeks to open any new accounts, it will endeavor to have such accounts opened at financial institutions approved by the U.S. Trustee. Nevertheless, as a matter of precaution, the Debtor requests a waiver of the requirements of section 345(b) of the Bankruptcy Code to permit the Debtor to maintain its Bank Accounts without posting a bond or other security.

## <u>SATISFACTION OF BANKRUPTCY RULE 6003</u>

34.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. <u>See</u> <u>In re Ames Dep't Stores, Inc.</u>, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

35.     As described herein and in the First Day Declaration, the Debtor will suffer immediate and irreparable harm without authorization for the relief requested herein. Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## **WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

36.     The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate.  Accordingly, the Debtor respectfully requests that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

37.     To implement the foregoing immediately, the Debtor respectfully requests a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## **RESERVATION OF RIGHTS**

38.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor and its estate; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to the validity, priority, or amount of any claim against the Debtor and its estate; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## **NOTICE**

39.     Notice of this Motion has been or will be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the

District of Delaware; (iii) the Internal Revenue Service; (iv) counsel for the Prepetition Secured Parties; (v) the Banks; and (vi) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate.  As this Motion is seeking "first day" relief, within two (2) business days of the hearing of this Motion, the Debtor will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtor requests that the Court enter the Proposed Orders, granting

the relief requested herein and such other and further relief as is just and proper.

Dated:  July 11, 2022
        Wilmington, Delaware

                        **RICHARDS, LAYTON & FINGER, P.A.**

                        */s/ David T. Queroli*
                        Daniel J. DeFranceschi (No. 2732)
                        Michael J. Merchant (No. 3854)
                        David T. Queroli (No. 6318)
                        One Rodney Square
                        920 North King Street
                        Wilmington, Delaware 19801
                        Telephone: (302) 651-7700
                        Facsimile: (302) 651-7701
                        defranceschi@rlf.com
                        merchant@rlf.com
                        queroli@rlf.com

                        -and-

                        **WILLKIE FARR & GALLAGHER LLP**
                        Rachel C. Strickland (*pro hac vice* pending)
                        Paul V. Shalhoub (*pro hac vice* pending)
                        Betsy L. Feldman (No. 6410)
                        Jessica D. Graber (*pro hac vice* pending)
                        787 Seventh Avenue
                        New York, New York 10019
                        Telephone:  (212) 728-8000
                        Facsimile:  (212) 728-8111
                        rstrickland@willkie.com
                        pshalhoub@willkie.com
                        bfeldman@willkie.com
                        jgraber@willkie.com

                        *Proposed Co-Counsel to the Debtor and Debtor in Possession*

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| GENAPSYS, INC.,[1] | Case No. 22-_____ (___) |
| Debtor. | **Ref. Docket No. ___** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE TO
MAINTAIN ITS CASH MANAGEMENT SYSTEM, INCLUDING BANK ACCOUNTS
AND BUSINESS FORMS, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO; (II) WAIVING (A) CERTAIN OPERATING
GUIDELINES, AND (B) SECTION 345(b) DEPOSIT AND
INVESTMENT REQUIREMENTS; AND
(III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and

debtor in possession (the "Debtor") for the entry of interim and final orders, pursuant to sections

105, 345, 363, 1107(a), and 1108 of the Bankruptcy Code, (i) authorizing, but not directing, the

Debtor to (a) continue to maintain its existing cash management system, including bank accounts

and business forms and (b) honor certain prepetition obligations related thereto; (ii) waiving

(a) certain operating guidelines, and (b) the deposit and investment requirements of section

345(b) of the Bankruptcy Code; and upon consideration of the Motion and all pleadings related

thereto, including the First Day Declaration; and due and proper notice of the Motion having

been given; and having determined that no other or further notice of the Motion is required; and

having determined that this Court has jurisdiction to consider the Motion in accordance with 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

---

[1]    The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is
       GenapSys, Inc. (3904).  The Debtor's headquarters are located at 200 Cardinal Way, 3rd Floor, Redwood City,
       CA 94063.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Motion.

District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      A final hearing on the relief sought in the Motion shall be conducted on _____, 2022 at _____ (ET) (the "<u>Final Hearing</u>").  Any party-in-interest objecting to the relief sought at the Final Hearing or the Proposed Final Order shall file and serve a written objection, which objection shall be served upon (i) GenapSys, Inc., 200 Cardinal Way, 3rd Floor, Redwood City, CA 94063, Attn:  Dana J. Moss (legal@genapsys.com); (ii) proposed co-counsel for the Debtor, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn:   Rachel C. Strickland, Esq. (rstrickland@willkie.com) and Paul V. Shalhoub, Esq. (pshalhoub@willkie.com) and (b) Richards, Layton, & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn:    Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com), Michael J. Merchant, Esq. (merchant@rlf.com), and David T. Queroli, Esq. (queroli@rlf.com); (c) counsel for the Prepetition Secured Parties, (i) Greenberg Traurig LLP, 1000 Louisiana Street, Suite 1700, Houston, Texas 77002 (Attn: Shari L. Heyen (heyens@gtlaw.com) and Eric J. Howe (<u>howee@gtlaw.com</u>)) and (ii) Greenberg Traurig LLP, Terminus 200, 3333 Piedmont Road NE, Suite 2500, Atlanta, Georgia 30305 (Attn: David B. Kurzweil (kurzweild@gtlaw.com) and Matthew A. Petrie (petriem@gtlaw.com); and (d) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attn:  Jane M. Leamy, Esq.

RLF1 27605119v.1

(jane.m.leamy@usdoj.gov), no later than _____, 2022 at 4:00 p.m. (ET).  If no objections to the entry of the Proposed Final Order are timely filed, this Court may enter the Proposed Final Order without further notice or a hearing.

3.      The Debtor is authorized, but not directed, to: (i) continue to maintain and use the Cash Management System as described in the Motion and (ii) honor prepetition obligations related thereto.

4.      The Debtor is further authorized, but not directed, to (i) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date; (ii) use, in their present form, any preprinted correspondence and Business Forms (including checks and letterhead) without reference to the Debtor's status as debtor in possession; provided that once the Business Forms (including letterhead and existing checks) have been used, the Debtor shall, when reordering, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all such documents; (iii) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (iv) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, ACH Transfers, wire transfers, and other debits; and (v) perform its obligations under the documents governing the Bank Accounts.  With respect to Business Forms that the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such Business Forms within ten (10) days of the date of entry of this Interim Order.

5.      The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtor as debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the

holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtor before the Petition Date may be honored by a Bank if specifically authorized by order of this Court.

6.      The Banks are hereby authorized to debit Bank Fees from the Bank Accounts without further order of this Court, provided that such fees and charges are authorized under the applicable account agreement with the Debtor, and provided further that nothing set forth herein shall authorize any of the Banks to debit any claim or charges not in the ordinary course of business and not permitted under the applicable account agreements.

7.      Notwithstanding any other provision of this Interim Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (i) at the direction of the Debtor; (ii) in good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake made despite implementation of reasonable item handling procedures, shall be deemed to be liable to the Debtor, its estate, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

8.      Each of the Banks is authorized to debit the Debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the Chapter 11 Case; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtor's accounts with such Bank prior to filing of the Chapter 11 Case which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for

4

such items prior to filing of the Chapter 11 Case; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

9.     Each of the Banks may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

10.     Within fifteen (15) days of the date of entry of this Interim Order, the Debtor shall (i) contact the Banks; (ii) provide the Banks with the Debtor's employer identification number and the case number of the Chapter 11 Case; and (iii) identify for the Banks each of the Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

11.     For Banks at which the Debtor holds Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good-faith effort to cause such Banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty days of the date of the Interim Order.

12.     The Debtor is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion; provided that (a) the Prepetition Agent and Rabbet Funding, L.L.C., as administrative agent of the DIP, consents to the same, and (b) the Debtor provides the United States Trustee for the District of Delaware ("U.S. Trustee") and counsel to any statutory committee appointed in this Chapter 11 Case with notice within fifteen (15) days of opening or closing any such accounts; provided, further, that the Debtor shall only open any such new bank accounts at banks that have executed

a UDA with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement.

13.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived, as applicable.

14.     The Banks are authorized to continue to charge, and the Debtor is authorized to pay, honor, or allow the deduction from the appropriate account, any services charges or fees owed to the Banks in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.  The liens on any of the Bank Accounts granted to creditors will not have priority over such fees and charges of the respective Bank at which the Bank Account is located.

15.     The Debtor shall maintain accurate and detailed records of all transfers so that all transactions may be ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

16.     The Debtor shall have thirty days (or such additional time as the U.S. Trustee may agree to or this Court may order) from the date of the entry of this Interim Order within which to either comply with section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed to by the U.S. Trustee; provided, however, that such extension is without prejudice to the Debtor's right to request a further extension or waiver of the requirements of section 345(b) of the Bankruptcy Code.

17.     Within two (2) business days from the date of the entry of this Interim Order, the Debtor shall (i) serve a copy of this Interim Order on each Bank and (ii) request that each Bank internally code each of the Bank Accounts as "debtor in possession" accounts.

18.     Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtor or its estate with respect to the validity, priority or amount of any claim against the Debtor and its estate; or (iii) shall be construed as a promise to pay a claim.

19.     The Debtor is authorized to take any and all actions necessary to effectuate the relief granted herein.

20.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

21.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

22.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

RLF1 27605119v.1

## **EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GENAPSYS, INC.,[1] | Case No. 22-_____ (___) |
| Debtor. | **Ref. Docket Nos. ___ & ___** |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE TO MAINTAIN
ITS CASH MANAGEMENT SYSTEM, INCLUDING BANK ACCOUNTS AND
BUSINESS FORMS, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO; (II) WAIVING (A) CERTAIN OPERATING
GUIDELINES, AND (B) SECTION 345(b) DEPOSIT AND
INVESTMENT REQUIREMENTS; AND
(III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and

debtor in possession (the "Debtor") for the entry of interim and final orders, pursuant to sections

105, 345, 363, 1107(a), and 1108 of the Bankruptcy Code, (i) authorizing, but not directing, the

Debtor to (a) continue to maintain its existing cash management system, including bank accounts

and business forms and (b) honor certain prepetition obligations related thereto; (ii) waiving

(a) certain operating guidelines, and (b) the deposit and investment requirements of section

345(b) of the Bankruptcy Code; and upon consideration of the Motion and all pleadings related

thereto, including the First Day Declaration; and due and proper notice of the Motion having

been given; and having determined that no other or further notice of the Motion is required; and

having determined that this Court has jurisdiction to consider the Motion in accordance with 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

---

[1]    The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is
       GenapSys, Inc. (3904).  The Debtor's headquarters are located at 200 Cardinal Way, 3rd Floor, Redwood City,
       CA 94063.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Motion.

District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.     The Motion is GRANTED as set forth herein.

2.     The Debtor is authorized, but not directed, to: (i) continue to maintain and use the Cash Management System as described in the Motion and (ii) honor prepetition obligations related thereto.

3.     The Debtor is further authorized, but not directed, to (i) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date; (ii) use, in their present form, any preprinted correspondence and Business Forms (including checks and letterhead) without reference to the Debtor's status as debtor in possession, provided, that once the Business Forms (including letterhead and existing checks) have been used, the Debtor shall, when reordering, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all such documents; (iii) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (iv) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, ACH Transfers, wire transfers, and other debits; and (v) perform its obligations under the documents governing the Bank Accounts.  With respect to Business Forms that the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such Business Forms within ten (10) days of the date of entry of this Final Order.

RLF1 27605119v.1

4.      The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtor as debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtor before the Petition Date may be honored by a Bank if specifically authorized by order of this Court.

5.      The Banks are hereby authorized to debit Bank Fees from the Bank Accounts without further order of this Court, provided that such fees and charges are authorized under the applicable account agreement with the Debtor, and provided further that nothing set forth herein shall authorize any of the Banks to debit any claim or charges not in the ordinary course of business and not permitted under the applicable account agreements.

6.      Notwithstanding any other provision of this Final Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (i) at the direction of the Debtor; (ii) in good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake made despite implementation of reasonable item handling procedures, shall be deemed to be liable to the Debtor, its estate, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

7.      Each of the Banks is authorized to debit the Debtor's accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of

filing of the Chapter 11 Case; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtor's accounts with such Bank prior to filing of the Chapter 11 Case which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to filing of the Chapter 11 Case; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

8.     Each of the Banks may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

9.     Within fifteen (15) days of the date of entry of this Final Order, the Debtor shall (i) contact the Bank; (ii) provide the Bank with the Debtor's employer identification number and the case number of the Chapter 11 Case; and (iii) identify for the Bank each of the Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

10.     The Debtor is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion; provided that (a) the Prepetition Agent and Rabbet Funding, L.L.C., as administrative agent of the DIP, consents to the same and (b) the Debtor provides the U.S. Trustee and counsel to any statutory committee appointed in this Chapter 11 Case with notice within fifteen (15) days of opening or closing any such accounts; provided, further, that the Debtor shall only open any such new bank

4

accounts at banks that have executed a UDA with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement.

11.     For Banks at which the Debtor holds Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good-faith effort to cause such Banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty days of the date of the Interim Order.

12.     The Banks are authorized to continue to charge, and the Debtor is authorized to pay, honor, or allow the deduction from the appropriate account, any fees or service charges owed to the Banks in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.  The liens on any of the Bank Accounts granted to creditors will not have priority over the fees and services charges of the respective Bank at which the Bank Account is located.

13.     The Debtor shall maintain accurate and detailed records of all transfers, so that all transactions may be ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions.

14.     The requirements of section 345(b) of the Bankruptcy Code are waived on a final basis.

15.     Within two (2) business days from the date of the entry of this Final Order, the Debtor shall (i) serve a copy of this Final Order on each Bank and (ii) request that each Bank internally code each of the Bank Accounts as "debtor in possession" accounts.

16.     Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor and its estate; (ii) shall impair, prejudice, waive, or

otherwise affect the rights of the Debtor and its estate with respect to the validity, priority, or amount of any claim against the Debtor and its estate; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to any and all claims or causes of action against any Taxing Authority; or (iv) shall be construed as a promise to pay a claim.

17.     The Debtor is authorized to take any and all actions necessary to effectuate the relief granted herein.

18.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

19.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

RLF1 27605119v.1

## **EXHIBIT C**

**Bank Accounts**

| Bank | Account Type | Account Number (Last 4 Digits) |
|---|---|---|
| EastWest | Operating Account | 2419 |
| EastWest | Oxford Account | 7223 |
| EastWest | FSA Account | 2344 |
| EastWest | Receivable Account | 2427 |
| EastWest | Reserve Account | 0069 |
| EastWest | Money Market Account | 7522 |
| EastWest | Money Market Account | 2435 |
| SVB | Checking Account | 8907 |
| SVB | Money Market Account | 8512 |
| SVB | Money Market Fund | 1068 |