## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GENAPSYS, INC.,[1] | Case No. 22-_____ (___) |
| Debtor. | |

## DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN PREPETITION EMPLOYMENT OBLIGATIONS AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

The above-captioned debtor and debtor in possession (the "Debtor") hereby files this motion (the "Motion") for the entry of interim and final orders, substantially in the forms attached as Exhibit A (the "Proposed Interim Order") and Exhibit B (the "Proposed Final Order," and together with the Proposed Interim Order, the "Proposed Orders"), (i) authorizing the Debtor, in its discretion, to pay the Prepetition Workforce Obligations (as defined below) and maintain the Employee Benefit Obligations (as defined below) and (ii) granting related relief. In support of this Motion, the Debtor submits the *Declaration of Britton Russell in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration").[2] In further support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District

---

[1]     The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is GenapSys, Inc. (3904). The Debtor's headquarters are located at 200 Cardinal Way, 3rd Floor, Redwood City, CA 94063.

[2]     Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 507(a) and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  The Debtor is authorized to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in the Chapter 11 Case, and no request has been made for the appointment of a trustee or an examiner. Additional information regarding the Debtor's business, its capital structure, and the circumstances leading to the filing of the Chapter 11 Case is set forth in the First Day Declaration.

## RELIEF REQUESTED

4.      The Debtor requests entry of the Proposed Orders authorizing, but not directing, the Debtor, in its discretion, to:  (i) pay all prepetition wages, salaries and compensation to Employees and Independent Contractors (each as defined below) and all related administrative and incidental costs (all as described below and, collectively, the "Compensation Obligations") and

2

prepetition employee benefits (all as described below and, collectively, the "Employee Benefit Obligations"); (ii) pay all employment, unemployment, Social Security, and federal, state, and local taxes relating to the Compensation Obligations and Employee Benefit Obligations, whether withheld from wages or paid directly by the Debtor to governmental authorities (collectively, "Payroll Taxes"), and make other payroll deductions, including, but not limited to, retirement and other employee benefit plan contributions, garnishments and voluntary deductions (all as described below and, collectively with the Payroll Taxes, the "Payroll Deduction Obligations" and, collectively with the Compensation Obligations and Employee Benefit Obligations, the "Prepetition Workforce Obligations"); and (iii) honor and continue the Debtor's prepetition programs, policies and practices as described in this Motion in the ordinary course of business.

5.      The Debtor estimates that before the final hearing on this Motion, Prepetition Workforce Obligations totaling approximately $1,449,500 will be due and payable (the "Interim Amount").  To fulfill these imminent commitments, the Debtor requests entry of the Proposed Interim Order, authorizing the Debtor to pay Prepetition Workforce Obligations in an aggregate amount not to exceed the Interim Amount, subject to the $15,150 statutory cap per current or former employee established by sections 507(a)(4) and (a)(5) of the Bankruptcy Code.  The Debtor also seeks the final hearing on this Motion so that it may pay all other Prepetition Obligations.

6.      Further, the Debtor requests that this Court authorize applicable banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers or other forms of payment drawn or issued on the Debtor's bank accounts before the Petition Date for Prepetition Obligations (or to reissue checks, drafts, electronic fund transfers or other forms of payment drawn or issued on the Debtor's bank accounts, as may be necessary), and authorize, but not direct, the banks and financial institutions to rely on the Debtor's representations as to which

3

checks, drafts, electronic fund transfers or other forms of payment drawn or issued on the Debtor's bank accounts are subject to this Motion; _provided_ that sufficient funds are on deposit in the applicable bank accounts to cover such payments.[3]

## THE DEBTOR'S WORKFORCE

7.       As of the Petition Date, the Debtor employed approximately 46 full-time employees (the "Employees").  The workforce is divided among Debtor's facilities located in Redwood City, California (the "Headquarters") and Westminster, Colorado.  Additionally, a significant number of Employees work from remote locations throughout the United States.  None of the Employees are part-time, seasonal, or temporary Employees.  Approximately 45 of the Debtor's current Employees are salaried Employees (such Employees, the "Salaried Employees") and one is an hourly Employee.  Additionally, in the ordinary course of its business, the Debtor uses independent contractors (the "Independent Contractors"); however, the Debtor does not currently use any Independent Contractors.

8.       The Employees perform a variety of critical functions throughout the Debtor's business, including, among other things, operating and managing the Debtor's facilities, developing new and varied products and processes, establishing sales relationships with customers and providing necessary administrative, managerial and financial support services from the Debtor's Headquarters and elsewhere.

9.       The Debtor's ability to run its business safely and productively depends entirely on the expertise and continued support and service of its workforce.  Due to the disruption and

---

[3]   Contemporaneously with the filing of this Motion, the Debtor has filed the _Debtor's Motion for Interim and Final Orders (I) Authorizing the Debtor To (A) Continue To Maintain Its Cash Management System, Including Bank Accounts and Business Forms, (B) Honor Certain Prepetition Obligations Related Thereto; (II) Waiving (A) Certain Operating Guidelines, and (B) Section 345(b) Deposit and Investment Requirements; and (III) Granting Related Relief_ (the "Cash Management Motion"), which seeks, among other things, authority to continue using the Debtor's cash management system, including its Bank Accounts (as defined in the Cash Management Motion).

RLF1 27605200v.1

uncertainty that typically accompany a chapter 11 filing, the Debtor believes that the continuity

and competence of its workforce would be jeopardized if the relief requested herein is not granted.

Moreover, if the Debtor fails to pay the Prepetition Obligations in the ordinary course of business,

its workforce will suffer extreme personal hardship and, in some cases, may be unable to pay their

basic living expenses.   This would have a highly negative impact on workforce morale and

productivity and would risk immediate and irreparable harm to the Debtor's continuing operations

and its estate.   Accordingly, the Debtor has determined that paying those obligations and

continuing all of the compensation and benefits programs described in this Motion are each vital

to preventing the loss of key members of the workforce during the pendency of the Chapter 11

Case and to maintaining the continuity and stability of the Debtor's operations.

## I.    Overview

10.    The obligations that the Debtor seeks authority to pay are summarized in the

following table:

| Obligations | Requested Interim Amount | Requested Final Amount |
|---|---|---|
| **Compensation Obligations** | **$624,000** | **$650,000** |
| *Wages and Independent Contractor Compensation* | $300,000 | $326,000 |
| *Payroll Deduction Obligations* | $132,000 | $132,000 |
| *Payroll Processing Fees* | $10,000 | $10,000 |
| *Incentive Payments* | $1,000 | $1,000 |
| *Severance Practices* | $181,000 | $181,000 |
| **Employee Benefit Obligations** | **$816,000** | **$1,146,000** |
| *Paid Leave* | $800,000 | $1,130,000 |
| *Expense Reimbursements* | $1,000 | $1,000 |
| *Health and Welfare Benefits* | $15,000 | $15,000 |
| **Workers' Compensation** | **$0** | **$0** |
| **Employee Retirement Benefits** | **$9,500** | **$9,500** |
| **TOTAL** | **$1,449,500** | **$1,805,500** |

## II.    Compensation Obligations

11.    As described in further detail below, as of the Petition Date, the Debtor estimates that the Compensation Obligations total approximately $650,000.

### A.    Wages, Independent Contractor Compensation, Deductions, and Garnishments

12.    Employees are paid their wages or salaries on account of their services to the Debtor on a bi-weekly basis every other Friday (collectively, the "Wages").  Over the past twelve (12) months, the average monthly payroll for Employees aggregated approximately $1.6 million.  As of the Petition Date, the Debtor estimates that it owes approximately $300,000 in accrued but unpaid Wages.

13.    The Debtor's average monthly spending on Independent Contractor compensation (the "Independent Contractor Compensation") over the past twelve months has been approximately $23,000; however, at present, the Debtor does not use the services of any Independent Contractors.  Independent Contractors submit invoices that are paid as part of the Debtor's standard accounting practices and according to the terms of the Independent Contractor's contracts with the Debtor.  As of the Petition Date, the Debtor believes that it owes approximately $26,000 on account of Independent Contractor Compensation, of which none will come due within the first twenty-one (21) days of this Chapter 11 Case.

14.    In the ordinary course of business, the Debtor takes deductions from Employees' paychecks for payments to third parties on behalf of Employees for various federal, state and local income, employment, payroll, and other taxes, as well as for savings programs, benefit plans, flexible spending accounts, insurance programs and other similar programs (collectively, and including the Payroll Taxes, the "Deductions").  Over the past twelve (12) months, the Debtor's average monthly Deductions for Employees aggregated approximately $700,000.  As of the

6

Petition Date, the Debtor estimates that it owes approximately $132,000 in Deductions, which for the avoidance of doubt includes Payroll Taxes amounts owed by the Debtor and amounts withheld from Employees and not yet remitted.

15.    In the ordinary course of processing payroll checks for its Employees, the Debtor may be required by law, in certain circumstances, to withhold from certain Employees' wages amounts for various garnishments, such as tax levies, child support and other court-ordered obligations (collectively, the "Garnishments").    When required, the Debtor withholds Garnishments from the applicable Employees' paychecks, and remits the same to the appropriate governmental authorities on the same schedule as the pay periods.  The Debtor estimates that, as of the Petition Date, there are no outstanding Garnishments.

### B.    Payroll Processing Services

16.    As of the Petition Date, all Employees have elected to have their payroll paid via direct deposit.  The Debtor uses ADP, LLC ("ADP") to administer its payroll, which includes calculating and processing gross-to-net payroll, issuing payroll payments to the appropriate funds transfer networks, generating pay statements and coordinating the payment of any Deductions, Garnishments, or other applicable withholdings.  ADP debits the Operating Account (as defined in the Cash Management Motion) to satisfy all payroll and associated withholding obligations. The ongoing services of ADP are imperative to the smooth functioning of the Debtor's operations and payroll processing.  The Debtor pays ADP approximately $7,000 per month for its services. The Debtor estimates that, as of the Petition Date, approximately $10,000 is owed to ADP in accrued but unpaid fees related to such services.

### C.    Incentive Payments

17.    In addition to the Wages, certain non-insider Employees are eligible to receive ordinary course incentive payments if certain metrics are achieved (the "Incentive Payments").

7

The specific metrics vary by Employee, but generally include certain milestone targets.  As of the Petition Date, the Debtor is aware of approximately $1,000 in accrued and unpaid Incentive Payments owed to one (1) non-insider Employee.

18.    By this Motion, the Debtor requests authority, but not direction, under the Final Order to pay eligible non-insider Employees on account of the Incentive Payments earned prior to the Petition Date up to the statutory priority amount of $15,150 per Employee (inclusive of other Compensation Obligations that are subject to section 507(a)(4) of the Bankruptcy Code) and to continue to otherwise pay Incentive Payments to eligible Employees in the ordinary course of business (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

### D.    Severance Practices

19.    In the ordinary course of business, the Debtor provides certain Employees with payments based on the length of employment to assist the affected Employee in transitioning to other employment upon the execution of a severance agreement (the "Severance Practices").[4] Once a severance agreement is signed and a seven-day revocation period, when applicable, has passed, severance is paid according to the regular payroll schedule.

20.    Accordingly, the Debtor is seeking the authority, but not direction, to continue the existing Severance Practices with respect to non-insiders in the ordinary course of business.  As of the Petition Date, the Debtor believes that it owes approximately $181,000 on account of

---

[4]    In certain circumstances, the Debtor may not provide payments in respect of the Severance Practices based on length of employment; rather, the Debtor may provide eligible Employees with payments based on a specified length of time.

prepetition obligations in respect of the Severance Practices, all of which will come due within the first twenty-one (21) days of this Chapter 11 Case.[5]

## III.    Employee Benefits Programs

### A.    Paid and Unpaid Leaves of Absence

21.    The Debtor maintains several paid leave benefit programs to its Employees, providing paid leave for personal time off ("PTO"), holidays, and other paid leave (collectively, the "Paid Leave").   As of the Petition Date, the Debtor believes it owes approximately $800,000 on account of accrued and payable Paid Leave for Employees.

22.    Paid Time Off.  All Employees are eligible for earned PTO for vacation, personal time, and sick days for themselves or a family member, for the diagnosis, care, or treatment of an existing health condition or preventative care.  Historically, eligible Employees were granted a specified number of PTO days based on the Employee's length of service with the Debtor since his or her hire date.  PTO would carry forward into the next year up to a maximum accrued amount based upon years of service with the Debtor.   The Debtor estimates that eligible Employees have accrued PTO valued at approximately $330,000.  On June 27, 2022, the Debtor updated its PTO policy:  PTO no longer accrues on a go-forward basis.  The Debtor seeks authority, but not direction, to honor and pay, in its sole discretion, any prepetition amounts that have accrued under the prior PTO policy as they come due, and to continue their new PTO policy in the ordinary course of business.

---

[5]    Pursuant to a contractual severance agreement, the Debtor may owe prepetition severance obligations to a former member of senior management of the Debtor.  However, by this Motion, the Debtor is not seeking authority to pay such contractual severance and reserves all rights to contest that such contractual severance is owed to the former officer.  The Debtor does not believe that there are any other prepetition obligations in respect of the Severance Practices.

9

23.     <u>Holidays</u>.  In addition, in 2022, the Debtor offered Employees twenty (20) paid holidays throughout the year (collectively, the "<u>Holidays</u>"). Generally, eligible Employees are not required to work on a designated Holiday and are paid for Holiday time at their base rate of pay.

24.     <u>Other Leaves of Absence</u>. The Debtor also permits Employees to take certain other paid and unpaid leaves of absence for personal reasons.  For example, the Debtor offers unpaid military leave, unpaid California family military leave (for California Employees only), unpaid volunteer civil service personnel leave (for California Employees only), paid time off for voting, unpaid leave for jury duty and witness duty, unpaid leave for victims of domestic violence, sexual assault or stalking (California Employees only), unpaid leave for victims of crime (California Employees only), paid bereavement leave, unpaid time off for parents (California Employees only), paid bone marrow and organ donor leave (California Employees only), paid pregnancy disability leave (California Employees only), and paid break times for nursing mothers.  The Debtor also permits Employees to take other paid and unpaid leaves of absence for personal reasons including paid bereavement leave and any other leave, paid or unpaid, as required by jurisdiction of an employee's work location.

25.     These forms of compensation are, in certain cases, required by statute, and in all cases, usual, customary and necessary if the Debtor is to retain qualified Employees to operate its business.  Failure to provide these benefits could contravene applicable law, harm Employee morale and encourage the premature departure of Employees.  The Debtor therefore requests authority to continue these benefits programs in the ordinary course of business during the Chapter 11 Case.

## B.     Expense Reimbursement

26.     The Debtor, in the ordinary course of business, reimburses Employees for a variety of ordinary, necessary, and reasonable business-related expenses that the Employees incur on

10

behalf of the Debtor in the scope of their employment (the "Reimbursable Expenses"). Most Employees initially incur and pay such Reimbursable Expenses by using personal funds or credit cards, but are subsequently reimbursed by the Debtor after submission and approval of expense reimbursement reports. The Debtor also historically provided certain other Employees with corporate Mastercard credit cards issued through Silicon Valley Bank (the "Corporate Cards"). In the ordinary course of business, the Debtor paid Silicon Valley Bank directly on a monthly basis on account of Reimbursable Expenses incurred under the Corporate Cards. Employees were expected to use sound judgment and good business sense when incurring such expenses, and the Debtor reserved executive approval to accept or deny repayment of all requested Reimbursable Expenses. The Debtor is in the process of shutting down the Corporate Card program with Silicon Valley Bank. As of the Petition Date, the Debtor believes that approximately $1,000 remains outstanding on account of prepetition Reimbursable Expenses.

### C.    Health and Welfare Benefits

27.    The Debtor offers its eligible Employees (i.e., only Employees that are regularly scheduled to work 30 or more hours per week) a large portfolio of benefits, including medical and prescription drug coverage, dental coverage, vision coverage, health savings accounts, coverage under the Consolidated Omnibus Budget Reconciliation Act Administration of 1985 ("COBRA"), flexible spending accounts, life insurance, disability insurance and other benefit programs provided to Employees in the ordinary course of business (collectively, and as listed in detail in paragraphs 28-35 below, the "Health and Welfare Benefits"). As of the Petition Date, the total accrued but unpaid obligations owed by the Debtor relating to the Health and Welfare Benefits are approximately $48,000.

11

### 1. Medical Plan

28.     The Debtor offers to all eligible Employees and their dependents the option to select between four medical plans (collectively, the "Medical Plans") administered through either Kaiser Permanente ("Kaiser") or Cigna.  The Kaiser HMO Medical Plan is fully funded and is only available to California-based Employees.  The three Cigna Medical Plans (a lower-premium PPO Medical Plan, a higher-premium PPO Medical Plan, and a HDHP Medical Plan) are level-funded.  The Debtor pays monthly fees based on the number of covered Employees for administrative services related to the Medical Plans.  The Debtor pays, on average, approximately $180,000 per month for fees associated with the Medical Plans.  The Kaiser Medical Plan is approximately 90% paid by the Debtor and 10% paid by the covered Employees through Deductions.  Among the Cigna Medical Plans, the lower-premium PPO Medical Plan is approximately 90% paid by the Debtor and 10% paid by the covered Employees through Deductions, the higher-premium PPO Medical Plan is approximately 90% paid by the Debtor and 10% paid by the covered Employees through Deductions, and the HDHP Medical Plan is approximately 90% paid by the Debtor and 10% paid by the covered Employees through Deductions.

29.     In the event of significant claims under the Cigna Medical Plans, the Debtor maintains a $75,000 deductible stop-loss insurance policy (the "Stop Loss Policy") administered by Cigna.  Payment of medical claims incurred under the Medical Plan is funded through a bank account owned by the Debtor from which Cigna withdraws to cover the Debtor's liability on these claims up to the deductible amount under the Stop Loss Policy.  The Debtor's monthly premiums under the Stop Loss Policy are included in the total cost of the Medical Plan described in the preceding paragraph.

RLF1 27605200v.1

### 2. Dental and Vision Plans

30.     In addition to the Medical Plans, the Debtor also offers all eligible Employees dental and vision benefits through Cigna (the "<u>Dental and Vision Plans</u>").  The Debtor subsidizes Employee premiums in connection with the Dental Plans and Employees contribute through payroll Deductions.  The Dental and Vision Plans are approximately 83% paid by the Debtor and 17% paid by the covered Employees through Deductions.

### 3. Flexible Spending Accounts

31.     All eligible Employees may elect to participate in the Debtor's tax-advantaged flexible spending account plans (the "<u>FSA Plans</u>") administered by Navia Benefit Solutions ("<u>Navia</u>"), under which the Debtor offers its Employees the ability to contribute a portion of their pre-tax compensation to flexible spending accounts to pay for eligible out-of-pocket health care and dependent care expenses.  Eligible Employees may set aside pre-tax dollars up to the maximum amount allowed under IRS regulations to pay for eligible health care expenses and dependent care expenses. Employees who elect to participate in the FSA Plans designate a certain amount per month to be withheld from their payroll as a Deduction.  The Debtor does not make contributions to the FSA plan; however, the Debtor pays a *de minimis* monthly administrative fee to Navia for each covered participant.  As of the Petition Date, the Debtor estimates the current FSA Plan balance as approximately $35,000.

### 4. Health Savings Account

32.     All Employees enrolled in the Cigna HDHP Medical Plan may elect to participate in the Debtor's tax-advantaged health savings account (the "<u>HSA Plan</u>") administered by Navia, under which the Debtor offers eligible Employees the ability to contribute a portion of their pre-tax compensation to a health savings account to pay for qualified out-of-pocket health care expenses for the Employee and qualified dependents.  Employees who elect to participate in the HSA Plan

13

designate a certain amount per month to be withheld from their payroll as a Deduction.  Employer

contributions are funded on a per-pay period basis.  As of the Petition Date, the Debtor believes

that approximately $3,000 remains outstanding on account of the HSA Plan.

### 5.    Life and Disability Insurance

33.    The Debtor provides all eligible Employees with basic life and basic accidental

death and dismemberment insurance coverage through Cigna in the event of serious illness, injury

or death ("Basic Life/AD&D Insurance") as well as short-term and long-term disability coverage

("Disability Coverage") administered by Cigna, in accordance with applicable state law.  The

Basic Life/AD&D Insurance and Disability Coverage costs the Debtor approximately $6,800  per

month.

### 6.    Unemployment Insurance

34.    The Debtor also pays premiums to provide all employees with unemployment

insurance benefits under certain circumstances of separation from employment, administered by

ADP (the "Unemployment Insurance").   Eligibility for benefits is determined by the state

unemployment agency.  The monthly amount for such benefits is approximately $1,200.

### 7.    Other Welfare Programs

35.    In addition to the foregoing, the Debtor has in place miscellaneous practices,

programs, and policies that provide medical and welfare benefits to eligible Employees, including

COBRA, commuter benefits, and various employee wellness programs (collectively, the "Other

Welfare Programs").   The Debtor believes that the Other Welfare Programs are important to

maintaining Employee morale and assisting in the retention of the Debtor's workforce. The

monthly cost of such programs for the Debtor is negligible in the context of the Debtor's aggregate

compensation and benefit obligations.  The Debtor believes that failing to honor expected benefits

under such Other Welfare Programs, as well as the other Health and Welfare Benefits,  would have

RLF1 27605200v.1

an adverse effect on the Employees.  The approximate amount accrued under the Other Welfare Programs as of the Petition Date is $10,000.

### D.     Workers' Compensation

36.     The Debtor maintains workers' compensation insurance that provides coverage for employee-related injuries, disability or death, as prescribed by state and federal workers' compensation laws and other statutes, at no cost to Employees (the "Workers' Compensation Program").  In connection with these requirements, the Debtor maintains workers' compensation insurance policies (collectively, the "Workers' Compensation Policies") through The Hartford Insurance ("Hartford").   Under the Workers' Compensation Policies, Hartford provides full insurance coverage for workers' compensation claims.  The annual premium for the Workers' Compensation Policies is $54,224, paid annually for the complete policy period.  As of the Petition Date, the Debtor believes that it is current with premiums and administrative expenses in connection with the Workers' Compensation Program.

37.     There are no current covered claims (collectively, the "Workers' Compensation Claims") open against the Debtor for fiscal year 2021-2022.  As a result, as of the Petition Date, the Debtor does not owe any obligations in connection with the Workers' Compensation Claims.

38.     To ensure that the Debtor complies with state law requirements, it is necessary to obtain authority to continue to maintain the Workers' Compensation Program in the ordinary course of business and authority, but not direction, to pay any prepetition amounts related thereto, including, without limitation, any payments for future Workers' Compensation Claims, premiums, deductibles, and fees owed for administrative costs, and other amounts required in connection with the Workers' Compensation Program as such amounts become due in the ordinary course of business.

15

### E.        Employee Retirement Benefits

39.        The Debtor maintains a 401(k) savings plan, a qualified defined contribution plan pursuant to section 401(k) of the Internal Revenue Code for all Employees (the "401(k) Plan"). The Debtor matches the Employees' 401(k) Plan contributions $0.50 for every dollar contributed by the employee up to six percent (6%) of any applicable wages in accordance with the plan documents (the "401(k) Matching Contribution").    Approximately 46 Employees currently actively participate in the 401(k) Plan, and 401(k) monthly contributions to the 401(k) Plan total approximately $69,000, which includes approximately $46,000 of Employee contributions made up of withholdings from participating Employees' paychecks and approximately $23,000 of 401(k) Matching Contributions.  As of the Petition Date, the Debtor believes it owes $9,000 on account of prepetition 401(k) Matching Contributions.

40.        The 401(k) Plan is administered through Voya Financial.  As of the Petition Date, the Debtor estimates that the aggregate amount of accrued but unpaid obligations owed by the Debtor on account of the 401(k) Plan, including the 401(k) Matching Contributions and administrative fees, is approximately $500.

### BASIS FOR RELIEF

I.        **Payment of the Prepetition Workforce Obligations Is a Sound Exercise of the Debtor's Business Judgment and Is Appropriate Under Sections 363 and 105(a) of the Bankruptcy Code.**

41.        Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); see also In re

16

Phoenix Steel Corp., 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); see also, e.g., In re Adelphia Commc'ns Corp., No. 02-41729 (REG), 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); In re Global Home Prods., LLC, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (reviewing incentive plans under the business judgment standard); In re Dana Corp., 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006) (reviewing bonus plans under the business judgment standard).

42.    In addition to being justified under section 363(b)(1) of the Bankruptcy Code, payment of the Prepetition Workforce Obligations is warranted under the doctrine of necessity. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) and the "doctrine of necessity," the Court may exercise its broad grant of equitable powers to permit the payment of prepetition obligations when such payment is essential to the continued operation of the debtor's business.  See, e.g., In re Just for Feet, Inc., 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191–92 (Bankr. D. Del. 1994)

17

(confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

43. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id*. (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); see also Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l, Inc.), No. 08-12136-BLS, 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (denying stay pending appeal on grounds that doctrine of necessity had not been brought into serious question by courts in Third Circuit).

44. The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy of Chapter 11." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Chateaugay Corp., 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); In re Just for Feet, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be

18

unable to reorganize without such payment."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process").  Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.

45.    It is a sound exercise of the Debtor's business judgment to pay the Prepetition Workforce Obligations because doing so will help the Debtor avoid the potential for value-destructive interruption to its business operations during this Chapter 11 Case.  For the reasons discussed here and throughout this Motion, payment of the Prepetition Workforce Obligations enhances value for the benefit of all interested parties.  The Debtor's ability to maximize value and continue operations depends, in large part, on the retention, motivation and productivity of its Workforce, whose efforts will be critical to the Debtor's successful reorganization.  Most of the Debtor's Workforce rely exclusively on the Prepetition Workforce Obligations to satisfy their daily living expenses.  If amounts owed are not received or other benefits are delayed, the Workforce may be exposed to significant financial hardship and, in some cases, will be unable to meet their basic needs, which may make continuing to work for the Debtor impossible.  If the Debtor is unable to satisfy its various compensation and benefits obligations, the Workforce will suffer at a time when their support is critical to the Debtor.  Therefore, in order to provide certainty to the Debtor's Workforce, maintain morale and productivity, limit turnover and minimize the adverse effect of the commencement of the Chapter 11 Case, it is necessary to continue providing ordinary course compensation and benefits.  Furthermore, where, as here, the Debtor is pursuing a prepackaged chapter 11 case in which general unsecured creditors will be paid in the ordinary

course after the effective date of the Plan, the non-payment of all Prepetition Workforce Obligations would be a needless and costly distraction.

46.     Further, the Debtor maintains that any payments in excess of the $15,150 per Employee statutory cap are appropriate, as the Debtor is seeking to maintain its business operations in the ordinary course.  As of the Petition Date, no Employee is owed accrued and unpaid prepetition obligations exceeding the cap,[6] and no amount is owed on account of any benefits plan exceeding the cap.  However, to the extent the Debtor determines that the payment of amounts in excess of the statutory cap to the Debtor's workforce is needed during the pendency of the Chapter 11 Case, the Debtor maintains that such payment is prudent to minimize any disruptions to operations.  Accordingly, the Debtor requests that the Court authorize the Debtor to pay and continue its compensation and benefit programs in the ordinary course of business and consistent with past practice, including, pursuant to the Proposed Final Order, to pay any amounts owed on account of Compensation Obligations or Employee Benefits Obligations in excess of the statutory cap.

## II.     Payment of Certain of the Prepetition Workforce Obligations is Required as Priority Claims.

47.     The Debtor believes that the majority of the Prepetition Workforce Obligations constitute priority claims under sections 507(a)(4), (a)(5) and (a)(8) of the Bankruptcy Code, which must be satisfied before any general unsecured claims against the Debtor's estate.  11 U.S.C. §§ 507(a)(4), 507(a)(5), 507(a)(8), 726.  Specifically, under section 507(a)(4)(A) of the Bankruptcy Code, claims of employees for "wages, salaries, or commissions, including vacation, severance,

---

[6]     For the avoidance of doubt, no current Employee is owed any amount in excess of the statutory cap.

20

and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status up to $15,150 per individual.  11 U.S.C. § 507(a)(4)(A).

48.     Similarly, under section 507(a)(5) of the Bankruptcy Code, employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status up to $15,150 per employee covered by such plan, less any amount paid under section 507(a)(4).  11 U.S.C. § 507(a)(5)(A).  The same holds true for the payment of the Payroll Taxes, as the relevant taxing authorities generally would hold priority claims under section 507(a)(8) of the Bankruptcy Code for such obligations and their payment therefore will not prejudice other creditors of the Debtor.  See 11 U.S.C. § 507(a)(8).[7]

49.     The Debtor believes that no Employee is owed accrued and unpaid wages in excess of the cap and no amounts are accrued and owing under any benefits plan in excess of the cap. Thus, substantially all the Prepetition Workforce Obligations are priority claims that, in any event, will have to be paid in full, and payment of the Prepetition Workforce Obligations merely expedites the treatment afforded to such claims and is consistent with the priority scheme of the Bankruptcy Code.  Accordingly, the Debtor requests entry of the Proposed Interim Order authorizing the Debtor to pay the Prepetition Workforce Obligations in an aggregate amount not to exceed the Interim Amount subject to the $15,150 per Employee cap, followed by the final hearing on this Motion authorizing the Debtor to pay all other Prepetition Obligations.

---

[7]     Section 507(a)(8) of the Bankruptcy Code affords priority to, among other things, unsecured claims of governmental units for (i) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity (§ 507(a)(8)(C)) and (ii) under certain circumstances, employment taxes on wages, salaries, or commissions (§ 507(a)(8)(D)).

**III.     Funds Related to the Payroll Taxes and Payroll Deduction Obligations May Be Held In Trust and Are Not Property of the Estate.**

50.     Payroll Taxes withheld from an Employee's wages and any other Payroll Deduction Obligations are collected or withheld by the Debtor and may be held in trust for the benefit of the applicable taxing authority.   As a result, Payroll Taxes and other Payroll Deduction Obligations are not property of the Debtor's estate under section 541 of the Bankruptcy Code, and those funds, therefore, are not available for the satisfaction of creditors' claims.  See, e.g., Begier v. IRS, 496 U.S. 53 (1990) (withheld taxes are property held by the debtor in trust for another and, as such, not property of the debtor's estate); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); see generally In re Columbia Gas Sys. Inc., 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found).  Instead, the Debtor may be obligated to remit these funds to the applicable taxing authority.

51.     Many federal, state and local statutes also impose personal liability on officers and directors of companies for certain Payroll Taxes and other Payroll Deduction Obligations.  To the extent that the relevant Payroll Taxes and other Payroll Deduction Obligations remain unpaid by the Debtor, the Debtor's managers, directors, officers and executives may be subject to lawsuits or criminal prosecution during the pendency of the Chapter 11 Case.  Any such lawsuit or criminal prosecution (and the ensuing potential liability) would distract the Debtor and its managers, directors, officers and executives from devoting their full attention to the Debtor's businesses and the orderly administration of the Chapter 11 Case.  The Debtor believes that these distractions would materially undermine its ability to operate in the ordinary course of business and to administer the Chapter 11 Case, with resulting detriment to any parties in interest.

RLF1 27605200v.1

52.     For these reasons, the Debtor submits that the relief requested is essential, appropriate and in the best interests of its estate, creditors, and any parties in interest, and therefore should be granted.

## IV.    A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here.

53.     Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

54.     The Debtor seeks authorization, under section 362(d) of the Bankruptcy Code, to permit its Employees to proceed with their claims under the Workers' Compensation Policies in the appropriate judicial or administrative forum.  The Debtor believes that cause exists to modify the automatic stay because staying an employee's workers' compensation claim could have a detrimental effect on the financial well-being and morale of the Employees and lead to the departure of certain Employees.  As discussed above, such departures could cause a severe disruption in the Debtor's business to the detriment of all stakeholders.  Accordingly, the Debtor requests a limited waiver of the automatic stay for purposes of allowing the Workers' Compensation Claims to proceed.

## V.    Processing of Checks and Electronic Fund Transfers Should Be Authorized.

55.     The Debtor further requests that the Court authorize and direct its banking institutions and all other applicable banks and other financial institutions to receive, process, honor and pay any and all checks drawn or electronic funds relating to the Prepetition Obligations,

23

whether such checks were presented before or after the Petition Date; provided that sufficient funds are on deposit in the applicable bank accounts to cover such payments.  The Debtor has sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of access to the DIP Facility and cash collateral pursuant to the DIP financing orders.  In addition, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to an authorized payment to be made hereunder.  For that reason, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  The Debtor also seeks authority to issue new postpetition checks or effect new electronic fund transfers, on account of the Prepetition Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtor's Chapter 11 Case.

## SATISFACTION OF BANKRUPTCY RULE 6003

56.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

57.     As described herein and in the First Day Declaration, the Debtor will suffer immediate and irreparable harm without authorization for the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

58.     The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate.  Accordingly, the Debtor respectfully requests that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

59.     To implement the foregoing immediately, the Debtor respectfully requests a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

60.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor and its estate; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to the validity, priority, or amount of any claim against the Debtor and its estate; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## NOTICE

61.     Notice of this Motion has been or will be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) counsel for the Prepetition Secured Parties; (v) the Banks; and (vi) those creditors holding the twenty (20) largest unsecured claims

against the Debtor's estate.  As this Motion is seeking "first day" relief, within two (2) business days of the hearing of this Motion, the Debtor will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

26

## **CONCLUSION**

WHEREFORE, the Debtor requests that the Court enter the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated:   July 11, 2022
         Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**

*/s/ David T. Queroli*
Daniel J. DeFranceschi (No. 2732)
Michael J. Merchant (No. 3854)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
defranceschi@rlf.com
merchant@rlf.com
queroli@rlf.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (*pro hac vice* pending)
Paul V. Shalhoub (*pro hac vice* pending)
Betsy L. Feldman (No. 6410)
Jessica D. Graber (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
pshalhoub@willkie.com
bfeldman@willkie.com
jgraber@willkie.com

*Proposed Co-Counsel to the Debtor and Debtor in
Possession*

27

**Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GENAPSYS, INC.,[1] | Case No. 22-_____ (___) |
| Debtor. | **Ref. Docket No. ___** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN
PREPETITION EMPLOYMENT OBLIGATIONS AND (B) MAINTAIN EMPLOYEE
BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and

debtor in possession (the "Debtor") for the entry of interim and final orders, pursuant to sections

105(a), 363(b), 507(a) and 541 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and

Local Rule 9013-1, (i) authorizing the Debtor, in its discretion, as deemed necessary to continue

to operate and preserve value, to (a) pay all Prepetition Obligations and (b) honor and continue the

Debtor's prepetition programs, policies and practices as described in the Motion in the ordinary

course of business; and (ii) granting certain related relief, all as more fully set forth in the Motion;

and upon consideration of the Motion and all pleadings related thereto, including the First Day

Declaration; and due and proper notice of the Motion having been given; and having determined

that no other or further notice of the Motion is required; and having determined that this Court has

jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is GenapSys, Inc. (3904). The Debtor's headquarters are located at 200 Cardinal Way, 3rd Floor, Redwood City, CA 94063.

[2] Capitalized terms used but not defined in this Interim Order have the meanings used in the Motion.

pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.        The Motion is GRANTED on an interim basis as set forth herein.

2.        A final hearing on the relief sought in the Motion shall be conducted on _____, 2022 at _____ (ET) (the "<u>Final Hearing</u>").  Any party-in-interest objecting to the relief sought at the Final Hearing or the Proposed Final Order shall file and serve a written objection, which objection shall be served upon (i) GenapSys, Inc., 200 Cardinal Way, 3rd Floor, Redwood City, CA 94063, Attn:  Dana J. Moss (legal@genapsys.com); (ii) proposed co-counsel for the Debtor, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn:   Rachel C. Strickland, Esq. (rstrickland@willkie.com) and Paul V. Shalhoub, Esq. (pshalhoub@willkie.com) and (b) Richards, Layton, & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn:    Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com), Michael J. Merchant, Esq. (merchant@rlf.com), and David T. Queroli, Esq. (queroli@rlf.com); (c) counsel for the Prepetition Secured Parties, (i) Greenberg Traurig LLP, 1000 Louisiana Street, Suite 1700, Houston, Texas 77002 (Attn: Shari L. Heyen (heyens@gtlaw.com) and Eric J. Howe (howee@gtlaw.com)) and (ii) Greenberg Traurig LLP, Terminus 200, 3333 Piedmont Road NE, Suite 2500, Atlanta, Georgia 30305 (Attn: David B. Kurzweil (kurzweild@gtlaw.com) and Matthew A. Petrie (petriem@gtlaw.com)); and (d) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attn:    Jane M. Leamy, Esq. (jane.m.leamy@usdoj.gov), in each case no later than _____, 2022 at 4:00 p.m. (ET).

If no objections to the entry of the Proposed Final Order are timely filed, this Court may enter the Proposed Final Order without further notice or a hearing.

3.      The Debtor is authorized but not directed, in its discretion and business judgment, to (i) pay or otherwise honor all Prepetition Workforce Obligations in an amount not to exceed $1,449,500 on an interim basis; (ii) honor and continue its programs, policies and practices described in the Motion that were in effect as of the Petition Date, in the ordinary course of business, and in the same manner and on the same basis as the Debtor honored and continued such programs, policies and practices before the Petition Date; and (iii) withhold and remit all federal, state and local taxes relating to the Compensation Obligations and Employee Benefit Obligations as required by applicable law.

4.      Notwithstanding any other provision of this Interim Order and absent further order of the Court, (i) payments on account of prepetition obligations in the interim period shall be limited by sections 507(a)(4) and (a)(5) of the Bankruptcy Code and capped at the amount afforded priority by those statutory subsections; and (ii) the Debtor is not authorized to "cash out" unpaid vacation days upon termination/resignation of an employee in excess of the caps provided by section 507(a)(4) or (a)(5) of the Bankruptcy Code unless applicable state law requires such payment.

5.      Nothing herein shall be deemed to (i) authorize the payment of any amounts by the Debtor that are subject to section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any obligations related to the Severance Practices to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code) or (ii) violate or permit a violation of section 503(c) of the Bankruptcy Code.

3

6.      Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their Workers' Compensation Claims in the appropriate judicial or administrative forum, and the Debtor is authorized to continue the Workers' Compensation Policies and to pay the Workers' Compensation Claims.  This modification of the automatic stay pertains solely to pursuing Workers' Compensation Claims.

7.      The Debtor is authorized to reissue payment for the Prepetition Obligations and to replace any inadvertently dishonored or rejected payments.  Further, the Debtor is authorized to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

8.      The Banks are authorized, when requested by the Debtor, in the Debtor's discretion, to honor and process checks or electronic fund transfers drawn on the Debtor's bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtor with respect to whether any check or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtor, as provided for in this Interim Order.

9.      The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtor as debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued

4

by the Debtor before the Petition Date may be honored by a Bank if specifically authorized by order of this Court.

10.     Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtor or its estate with respect to the validity, priority or amount of any claim against the Debtor and its estate; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

11.     The Debtor is authorized to take any and all actions necessary to effectuate the relief granted herein.

12.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

13.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

RLF1 27605200v.1

**<u>Exhibit B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GENAPSYS, INC.,[1]<br><br>                Debtor. | Chapter 11<br><br>Case No. 22-_____ (___)<br><br>**Ref. Docket Nos. ___ & ___** |

### FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN PREPETITION EMPLOYMENT OBLIGATIONS AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 507(a) and 541 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1, (i) authorizing the Debtor, in its discretion, as deemed necessary to continue to operate and preserve value, to (a) pay all Prepetition Obligations and (b) honor and continue the Debtor's prepetition programs, policies and practices as described in the Motion in the ordinary course of business; and (ii) granting certain related relief, all as more fully set forth in the Motion; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding

---

[1]    The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is GenapSys, Inc. (3904).  The Debtor's headquarters are located at 200 Cardinal Way, 3rd Floor, Redwood City, CA 94063.

[2]    Capitalized terms used but not defined in this Final Order have the meanings used in the Motion.

pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtor is authorized but not directed, in its discretion and business judgment, to (i) pay or otherwise honor all Prepetition Obligations in an amount not to exceed $1,805,000 on a final basis; (ii) honor and continue its programs, policies and practices described in the Motion that were in effect as of the Petition Date, in the ordinary course of business, and in the same manner and on the same basis as the Debtor honored and continued such programs, policies and practices before the Petition Date; and (iii) withhold and remit all federal, state and local taxes relating to the Compensation Obligations and Employee Benefit Obligations as required by applicable law.

3.      Notwithstanding any other provision of this Final Order and absent further order of the Court, (i) payments on account of prepetition obligations shall be limited by sections 507(a)(4) and (a)(5) of the Bankruptcy Code and capped at the amount afforded priority by those statutory subsections; and (ii) the Debtor is not authorized to "cash out" unpaid vacation days upon termination/resignation of an employee in excess of the caps provided by section 507(a)(4) or (a)(5) of the Bankruptcy Code unless applicable state law requires such payment.

4.      Nothing herein shall be deemed to (i) authorize the payment of any amounts by the Debtor that are subject to section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any obligations related to the Severance Practices to or on behalf of any

"insider" (as defined by section 101(31) of the Bankruptcy Code) or (ii) violate or permit a violation of section 503(c) of the Bankruptcy Code.

5. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their Workers' Compensation Claims in the appropriate judicial or administrative forum, and the Debtor is authorized to continue the Workers' Compensation Policies and pay the Workers' Compensation Claims. This modification of the automatic stay pertains solely to pursuing Workers' Compensation Claims.

6. The Debtor is authorized to reissue payment for the Prepetition Obligations and to replace any inadvertently dishonored or rejected payments. Further, the Debtor is authorized to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

7. The Banks are authorized, when requested by the Debtor, in the Debtor's discretion, to honor and process checks or electronic fund transfers drawn on the Debtor's bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Banks may rely on the representations of the Debtor with respect to whether any check or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtor, as provided for in this Final Order.

8. Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor; (ii) shall impair, prejudice, waive or otherwise

3

affect the rights of the Debtor or its estate with respect to the validity, priority or amount of any claim against the Debtor and its estate; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor and its estate with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

9.      The Debtor is authorized to take any and all actions necessary to effectuate the relief granted herein.

10.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

RLF1 27605200v.1