# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GENAPSYS, INC., | : | Case No. 22-10621 (BLS) |
| | : | |
| | : | Obj. Deadline: August 9, 2022[1] |
| Debtor. | : | Hearing Date: August 15, 2022 at 11:00 a.m. |

## UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING THE DEBTOR'S (I) KEY EMPLOYEE INCENTIVE PROGRAM AND (II) KEY EMPLOYEE RETENTION PROGRAM

In support of his objection to the *Debtor's Motion for Entry of an Order Approving the Debtor's (I) Key Employee Incentive Program and (II) Key Employee Retention Program* (the "Motion"), Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), by and through his undersigned counsel, states as follows:

## PRELIMINARY STATEMENT

1. The U.S. Trustee objects to the Motion on the basis that approval of the relief sought therein is premature at this time due to the pending *Motion (I) to Dismiss the Chapter 11 Case, or (II) in the Alternative, Appoint a Chapter 11 Trustee* ("Motion to Dismiss") [D.I. 73 & 98], which is currently scheduled for hearing on August 15, 2022. It is not known at this time whether any of the proposed participants in the Key Employee Incentive Program ("KEIP") or Key Employee Retention Program ("KERP") engaged in improper conduct. Because of this uncertainty, the Motion should not be granted prior to the disposition of the Motion to Dismiss.

2. To the extent that the Motion goes forward, the U.S. Trustee objects to the Motion

---

[1] The objection deadline was extended by agreement of the parties.

because the Debtor has not satisfied its burden under 11 U.S.C. § 503(c) to demonstrate that the proposed payments to six executives under the KEIP are not retention payments. While the Debtor alleges that the KEIP is a bonus plan meant to incentivize performance, the record does not contain sufficient facts for the Court to conclude that the metric used to determine the award amount is incentivizing as opposed to retentive in nature.

3. The Debtor also seeks approval of a KERP covering thirty-six (36) participants. However, the Debtor has not disclosed the names or titles of the KERP participants.[2] To the extent any of the KERP participants have officer and director titles, they are presumptive insiders for which the Bankruptcy Code prohibits retention bonuses absent specific findings identified in 11 U.S.C. § 503(c). The Debtor bears the burden of proof to establish that presumptive insiders should not be treated as insiders, and the Motion fails to meet this burden.

## **JURISDICTION, VENUE AND STANDING**

4. This Court has jurisdiction to hear this Objection.

5. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard

---

[2] The Motion also fails to identify the KEIP participants.

to this Objection.

## BACKGROUND

7. On July 11, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8. As of this date, the U.S. Trustee has not appointed an official committee of unsecured creditors in this case.

9. The Debtor is a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. On July 14, 2022, the Debtor filed a motion for approval of bidding procedures for the sale of substantially all of its assets ("Bid Procedures Motion") [Docket No. 54]. Pursuant to the Bid Procedures Motion, no stalking horse bidder has been selected. The Bid Procedures Motion is currently scheduled for hearing on August 15, 2022.

11. On July 25, 2022, Hesaam Esfandyarpour, Ph.D. and Kosar Parizi, Ph.D. filed the Motion to Dismiss.

12. On July 25, 2022, the Debtor filed the Motion, wherein it seeks entry of an order (a) approving a key employee incentive program (the "KEIP") for six executive employees with payments of up to approximately $691,000, and (b) approving a key employee retention plan (the "KERP") for the remaining 36 employees, with payments totaling approximately $698,000.

13. The Motion includes the total cost of the KEIP and KERP, the range of the awards thereunder and the number of participants. However, the Debtor did not disclose the names or titles of the KEIP and KERP participants, or the amount of the individual awards to be granted to each KEIP and KERP participant, under seal or otherwise.

14. Payments under the KEIP are subject to consummation of a sale of all or

substantially all of the Debtor's assets. In particular, there shall be no bonus amounts awarded under the KEIP unless the Debtor is able to consummate a transaction that exceeds the "Minimum KEIP Overbid," which is calculated as follows:

> a. If no Stalking Horse Bidder and Bid Protections have been approved by the Court: the sum of (I) $2 million; (II) cure costs of all assumed Contracts; (III) any transfer taxes resulting from the Sale; (IV) unless the DIP administrative Agent has agreed otherwise, the amount of the DIP Obligations; and (V) unless the Prepetition Agent has agreed otherwise, the Prepetition Loan Obligations; or
>
> b. If a Stalking Horse Bidder and Bid Protections have been approved by the Court: the sum of (I) $2 million; (II) cure costs of all assumed Contracts; (III) any transfer taxes resulting from the Sale; (IV) unless the DIP administrative Agent has agreed otherwise, the amount of the DIP Obligations; (V) unless the Prepetition Agent has agreed otherwise, the Prepetition Loan Obligations; and (VI) the Bid Protections, if any.

Mot. ¶ 13. For each dollar of consideration in excess of the Minimum KEIP Overbid, the amount of funds for the KEIP shall increase on a dollar-for-dollar basis up to a cap of approximately $690,000. *Id*. ¶ 14.

15. In the Motion, the Debtor asserts that none of the KERP plan participants are "insiders," as that term is defined in the Bankruptcy Code. Mot. ¶ 24. The Debtor has offered the declaration of Lisa Lansio support of the Motion (the "<u>Lansio Declaration</u>"). The Lansio Declaration provides conclusory statements regarding whether participants with certain officer or director titles are insiders. Lansio Decl. ¶ 22. Specific information about individual participants is not provided in the Lansio Declaration or in the Motion.

16. Under the proposed KERP, the average payment is approximately $20,000, ranging from 5-20% of each KERP participant's annual compensation. Mot. ¶ 26. Each participant will earn their award if they remain employed through the date of the closing of the

4

sale of the Debtor's assets. Mot. ¶ 28.

17. The Debtor has not yet filed its Schedules of Assets and Liabilities or its Statements of Financial Affairs.

## ARGUMENT

*The Court Should Defer Consideration of the Motion Pending the Hearing on the Motion to Dismiss*

18. The hearing on the Motion to Dismiss is currently scheduled for August 15, 2022. The Motion to Dismiss alleges that this case was filed without proper corporate authority. Mot. to Dismiss ¶ 1. In particular, on July 8, 2022, the Delaware Chancery Court issued a ruling providing in part that certain board members were improperly seated. *Id*. ¶ 31. Shortly thereafter, the board of directors was reconstituted to include certain of those same members, including, upon information and belief, at least one of the proposed KEIP participants. *Id.* ¶ 41. The Motion to Dismiss further alleges that the actions taken at the July 11, 2022 board meeting (at which the board authorized the chapter 11 filing) were invalid due to improper notice, as well as the improperly-seated board members. *Id*. ¶ 46.

19. Because the facts surrounding the issue of corporate authority are in dispute, it is not yet known if any of the proposed KEIP or KERP participants engaged in wrongdoing in connection therewith. Therefore, the Court should defer consideration of the Motion until after a ruling on the Motion to Dismiss.

*Statutory Framework and Burden of Proof*

20. Transfers to insiders must be reviewed under 11 U.S.C. § 503(c). If a transfer to an insider is for the purpose of inducing the insider to stay with the Debtor, the transfers are allowable only under Section 503(c)(1), even if the transfers are otherwise in the ordinary course of the Debtor's business. *See In re Nellson Nutraceutical*, 369 B.R.787, 800-801 (Bankr. D. Del.

2007).

21. Under section 503(c)(1) of the Bankruptcy Code, the Debtor must, "based on evidence in the record," demonstrate all three of the required elements set forth in section 503(c)(1). Section 503(c)(1), provides, in pertinent part, as follows:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
> (B) the services provided by the person are essential to the survival of the business; and
> (C) either—
>     (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>     (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

22. Congress added § 503(c) to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process." *In re Global Home Products, LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (citations omitted); *In re Residential Capital, LLC,* 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012) (to the same effect, quoting

*Global Home Products*, 369 B.R. at 784); *see also In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 800 (Bankr. D. Del. 2007) ("[I]t is widely acknowledged that the amendment was a response to perceived abuses of the bankruptcy system by 'the executives of giant companies . . . who lined their own pockets, but left thousands of employees and retirees out in the cold.'") (*quoting In re Dana Corp.,* 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2006) ("*Dana II*") and Statement of Senator Edward Kennedy (March 1, 2005)).

23. Under § 503(c), insider retention plans are "severely restricted." *Global Home Products*, 369 B.R. at 785. Courts should examine bonus plans "mindful of the practice that Congress sought to eradicate and . . . determine whether the proposed targets are designed to motivate insiders to rise to a challenge or merely report to work." *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012).

24. The Debtor, as the proponent of a bonus plan, has the burden of providing evidentiary support to establish that its bonus program is not a disguised retention plan governed by § 503(c)(1). *Hawker Beechcraft*, 479 B.R. at 314 ("[t]he proponent of the KEIP bears the burden of proving that the plan is not a retention plan governed by § 503(c)(1)"); *In re Residential Capital, LLC*, 478 B.R. at 170 ("In order to show that the more permissive § 503(c)(3) applies, the Debtor must establish by a preponderance of the evidence that the [KEIP] is primarily incentivizing and not primarily retentive."); *In re Mesa Air Group, Inc.*, No. 10- 10018, 2010 WL 3810899, at *3 (Bankr. S.D.N.Y. Sept. 24, 2012); *In re Dana Corp.,* 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006) ("*Dana I*"); *Global Home Products*, 369 B.R. at 783-85.

***The Debtor Has Failed to Satisfy Its Evidentiary Burden That the KEIP is Incentivizing, Rather than Retentive***

25.     The Debtor has failed to demonstrate that the KEIP complies with the limitations imposed by Congress on insider compensation under Section 503(c) of the Bankruptcy Code. Although the Debtor asserts that Section 503(c)(1) is inapplicable to the KEIP as a performance-based incentive plan, the Motion fails to contain information sufficient to demonstrate that the targets are "difficult targets to reach," rather than being "lay-ups." *Dana Corp.*, 358 B.R. at 583.

26.     As set forth by the Court in *Residential Capital*, "triggering bonus awards *solely on the basis of a sale transaction,* confirming a reorganization plan or exiting bankruptcy are not sufficient to shift consideration of a plan providing for payment to insiders from § 503(c)(1) to § 503(c)(3)." 478 B.R. at 172 (emphasis added).

27.     The Motion and supporting Declaration do not contain sufficient information as to how the Minimum KEIP Overbid constitutes a stretch for the insiders or whether it is a difficult target to reach. Without such information, it is impossible to determine if the KEIP is intended to induce a particular level of performance by the insiders or to just induce them to remain employed until the sale of the business occurs. If the targets are not difficult to reach, approval of the KEIP must be denied because it does not comply with section 503(c)(1) of the Bankruptcy Code.

28.     In reported cases interpreting section 503(c)(3), the primary factor that the courts have looked to is whether the incentives are material, as noted by Judge Sontchi in *Nellson Nutraceutical*, 369 B.R. 787. In *In re Nobex Corporation*, 2006 WL 4063024 (Bankr. D. Del. January 19, 2006) (MFW), Judge Walrath approved an incentive-based plan pursuant to section 503(c)(3) where the incentives were based upon the affected officers obtaining a sales price for substantially all assets of the estate higher than a stalking horse bid of $3.5 million. To obtain the bonus, the affected officers would have to produce a tangible result, a higher bid.

29. While the insiders may have assumed additional responsibilities in connection with the bankruptcy case and sale process, this is not enough to justify payments under the KEIP. As noted by the bankruptcy court in *In re Residential Capital, LLC*, 478 B.R. at 168, increased work for insiders is "true in virtually all chapter 11 cases; section 503(c) requires more than increased responsibilities to justify increased pay for insiders." The Debtor has not shown the insiders' increased responsibilities are different from those found in any other chapter 11 case or that they would not perform their duties without a bonus payment. Like the bankruptcy court found in *Hawker Beechcraft*, this Court must carefully scrutinize bonus motions for executives, to ensure that the Debtor has not dressed up a retention plan to look like an incentive plan with the hope that it will pass muster under the less demanding 'facts and circumstances' standard in ... § 503(c)(3)." *Hawker Beechcraft*, 479 B.R. at 313.

30. If the Court were to find that the KEIP is incentivizing, it must find that the KEIP is justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). The Debtor has the burden of proof to satisfy this standard and must establish a record to support approval of the KEIP under section 503(c)(3). The Court must make an independent determination that any incentive-based bonuses to insiders are justified by the facts and circumstances of the case, rather than deferring to the Debtor's business judgment.

***The Debtor Has Not Provided Sufficient Information Regarding the Participants in the KERP to Determine Whether Any of them Qualify as Insiders Under the Bankruptcy Code***

31. Section 503(c)(1) applies to "insiders" of the Debtor who are eligible for bonuses. The Debtor asserts that none of the KERP participants are insiders and provides only limited information to overcome the presumption. In particular, the Debtor has not filed a list of the KERP participants, under seal or otherwise. Section 101(31) of the Bankruptcy Code defines an "insider" of a corporation as an "officer," a "director," or a "person in control." 11 U.S.C. § 101(31). As

stated by this Court in *In re Foothills Texas, Inc.*, 408 B.R. 573, 585 (Bankr. D. Del. 2009) (Sontchi, J.), "[a] person holding the title of an officer, including vice president, is presumptively what he or she appears to be—an officer and, thus, an insider." The Debtor therefore must either submit evidence to rebut the presumption, or show that all participants in the KERP with officer titles meet the requirements of section 503(c)(1).

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

By:   */s/ Jane M. Leamy*
         Jane M. Leamy (#4113)
         Trial Attorney
         J. Caleb Boggs Federal Building
         844 King Street, Suite 2207, Lockbox 35
         Wilmington, DE 19801
         (302) 573-6491
         Jane.M.Leamy@usdoj.gov

Dated: August 9, 2022