# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> GENAPSYS, INC.,[1] <br><br>        Debtor. | Chapter 11 <br><br> Case No. 22-10621 (BLS) <br><br> Hearing Date: September 7, 2022 at 1:00 p.m. (ET) <br> Obj. Deadline August 30, 2022 at 4:00 p.m. (ET) <br><br> Re: Docket No. 54 |

## LIMITED OBJECTION OF FORESITE CAPITAL FUND IV, LP
## TO DEBTOR'S SALE MOTION

Foresite Capital Fund IV, LP ("Foresite"), by and through its undersigned counsel, hereby files this limited objection and reservation of rights (the "Objection") to the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder and to Provide Bidding Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief and (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and*

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is GenapSys, Inc. (3904). The Debtor's headquarters are located at 200 Cardinal Way, 3rd Floor, Redwood City, CA 94063.

*Unexpired Leases and (C) Granting Related Relief* [Docket No. 54] (the "Sale Motion").[2] In support of this Objection, Foresite respectfully states as follows:

## BACKGROUND

1. On July 11, 2022, the Debtor commenced a voluntary case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in the Chapter 11 Case.

2. On July 14, 2022, the Debtor filed the Sale Motion. Through the Sale Motion, the Debtor sought authorization to sell substantially all of its assets (the "Sale").

3. On August 12, 2022, the Debtor filed an *Emergency Moton for Entry of an Order (I) Authorizing and Approving Entry Into Stalking Horse Agreement and Related Bid Protections in Connection With the Sale of All or Substantially All of the Debtor's Assets, and (II) Granting Related Relief* [Docket No. 149] (the "Bid Procedures Motion"). Among other things, the Bid Procedures Motion sought authority to enter into a certain Asset Purchase Agreement dated as of August 12, 2022, attached thereto between the Debtor, as Seller, and Sequencing Health, Inc. as Buyer (the "Buyer").

4. Following a hearing on August 16, 2022, the Court granted the Bid Procedures Motion in part. On August 17, 2022, the Court entered its *Order (I) Approving Bidding Procedures for the Sale of Substantially all of the Debtor's Assets, (II) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (III) Approving Assumption and Assignment*

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

*Procedures, (IV) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 175] (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order, the Court set August 30, 2022, at 4:00 p.m. (ET) as the deadline for parties-in-interest to object to the Sale.

5. On August 23, 2022, the Court entered its *Order (I) Authorizing and Approving Entry Into Amended and Restated Stalking Horse Agreement and Related Expense Reimbursement In Connection With the Sale of All or Substantially All of the Debtor's Assets, and (II) Granting Related Relief* [Docket No. 198] (the "Stalking Horse Order"). By the Stalking Horse Order, the Court authorized and approved the Debtor's entry into an amended and restated form of the Stalking Horse Agreement attached thereto (the "Sale Agreement").

## THE FORESITE LITIGATION

6. Since June 15, 2020, Foresite has had a complaint pending against the Debtor. *See Foresite Capital Fund IV, L.P. v. GenapSys, Inc. and Hesaam Esfandyarpour, Ph.D.*, Case No. 20CV367605 (Superior Court for the State of California, County of Santa Clara) (hereinafter, the "Foresite Action").

7. Foresite's claims in the Foresite Action arise from the multiple, brazen scientific and financial fraudulent representations and omissions made by the Debtor and its founder, Dr. Hesaam Esfandyarpour ("Esfandyarpour"). Among other things, those misrepresentations fraudulently induced Foresite's $50 million capital investment in the Debtor in June 2019. *See* Foresite Action, Dkt. 118-6, Foresite's Second Amended Complaint (the "SAC").

8. As described in the SAC, the scope and nature of the fraudulent conduct by the Debtor and Esfandyarpour was egregious. For example, internal documents produced by the Debtor prove that, to obtain Foresite's money, the Debtor and Esfandyarpour manipulated scientific data regarding the performance of its technology, including test results generated in

response to a due diligence study performed by Foresite. They further demonstrate that the Debtor and Esfandyarpour purposefully manipulated financial reports provided to Foresite, such that the reports they provided to Foresite were fundamentally inconsistent with the Debtor's own internal financial information. Finally, the Debtor and Esfandyarpour made repeated misrepresntations about the demand for its products and its financial condition, all in an effort to portray the Debtor as a biotech company that was beyond the proof of concept stage and ready for commercial launch.

9. Foresite has thus asserted claims against the Debtor since June 2020, including for: (1) fraudulent inducement; (2) negligent misrepresentation; (3) violation of multiple provisions of the California Corporate Code; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; and (6) breach of fiduciary duty. SAC at ¶¶ 109-160.

10. For these claims, Foresite is seeking damages exceeding $100 million. This includes: (a) <u>rescission</u>, *i.e.* the full return of Foresite's $50 million investment, Cal. Corp. Code § 25503; (b) <u>compensatory damages</u> in the tens of millions, related to Foresite's lost opportunity costs as its other investments have been very successful (other than in the Debtor); (c) <u>prejudgment interest</u> as required by California statute, which is also already in the tens of millions, *id.*; (d) <u>attorneys' fees</u>, which will exceed ten million as well, *id.*; and (e) <u>punitive damages</u>, to be determined at trial but which, based on the evidence adduced thus far, are likely to be substantial.

11. The Debtor did not—because it had no basis to—seek to demurrer Foresite's claims (the California equivalent of a motion to dismiss). Instead, for the first 15 months of Foresite's case, Debtor and Esfandyarpour sought nothing other than to delay or avoid discovery. For example, during that time Debtor (a) declined to produce any documents, other than a handful of board materials and publicly available information; (b) would not produce any witnesses for deposition; (iii) refused to answer any interrogatories, even basic ones asking for an identification

of witnesses; (iv) urged third parties not to respond to Foresite's subpoenas for documents; and (v) unilaterally stopped complying with their contractual obligations to produce ongoing operational materials to Foresite.

12. After months of delay, Foresite finally obtained tens of thousands of the Debtor's internal documents, which immediately confirmed the extreme scope and severity of the misconduct by the Debtor and Esfandyarpour. Accordingly, Foresite sought to amend its complaint in March 2022, which motion was granted by the California court, including specific and detailed references to the internal documents proving the Debtor's fraud.

13. The California court has also required significant, additional discovery from the Debtor, including the collection and review of certain of the Debtor's internal documents. Although discovery was stayed when the Debtor filed for bankruptcy, production of these additional documents will be necessary in adjudicating and liquidating Foresite's claims, whether in this Court or by proceedings in the Foresite Action.

## **LIMITED OBJECTION**

14. Section 2.1 of the Sale Agreement provides that at the Closing,[3] the Debtor will sell, and the Buyer will purchase, all Purchased Assets, defined to mean "all, title and interest in and to all rights, properties and assets of Seller, real, personal or mixed, tangible or intangible, of every kind and description, except for the Excluded Assets." Purchased Assets include, without limitation, the Debtor's Books and Records, defined to mean:

> all books and records of Seller, including without limitation books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all

---

[3] Capitalized terms in the discussion of the Sale Agreement and the transactions related thereto have the meaning set forth in the Sale Agreement.

> correspondence with any Governmental Authority), sales material and records (including pricing history, total sales, terms and conditions of sale, sales and pricing policies and practices), copies of Tax Returns (other than income Tax Returns), strategic plans, internal financial statements, marketing and promotional surveys, material and research and files relating to the Intellectual Property . . ..

Sale Agreement at § 2.1(f).

15. There is no question that documents discoverable in or related to claims asserted by Foresite in the Foresite Action are within this broad definition. It is not apparent from the language of the Sale Agreement, however, that the Debtor will retain custody and control over these documents. To the contrary, the Sale Agreement appears to contemplate that the Debtor will transfer all of its documents to the Buyer, whether or not discoverable in or related to the claims asserted in the Foresite Action, and retain copies of Books and Records only as to any alleged *affirmative claims* against Foresite.

16. Section 2.1(f) of the Sale Agreement provides that the Debtor will retain a copy of certain of the Books and Records, but solely "for the purpose of Section 7.6" of the Sale Agreement. Section 7.6, however, provides for retention "solely to facilitate [the Debtor's] administration of the Bankruptcy case and wind down of the business related to the Excluded Assets." Excluded Assets includes "any rights, claims (including warranty claims or indemnities) or causes of action of Seller, solely to the extent relating to any Excluded Asset or Excluded Liability, including any and all claims *against Foresite Capital Management IV*, L.P., Hesaam Esfandyarpour, and any affiliates thereof." Sale Agreement at § 2.2. If the Debtor is permitted to retain copies of documents only as contemplated by Section 7.6 of the Sale Agreement, Foresite could find itself unable to obtain documents related to the claims asserted in the Foresite Action, while the Debtor maintains documents related to claims it may asset against Foresite.

17. Despite the Debtor's sustained resistance to produce documents in the Foresite Action, and the extraordinary efforts required to obtain even a portion of them, Foresite is prepared to accept the drafting of the Sale Agreement was not intended to bring about such a one-sided and unfair result.  Regardless, as a condition to approval of the Sale, whether by a closing under the Sale Agreement or otherwise, the Court should require, by appropriate language in the order approving the Sale, that the Debtor retain copies of all documents discoverable in or related to the claims asserted in the Foresite Action, and that following the closing of the Sale, all such documents are available for discovery by Foresite as provided under applicable laws and procedures.

WHEREFORE, Foresite respectfully requests that the Court condition approval of the Sale as set forth above, and grant such other and further relief as the Court deems just and proper.

DATED: August 30, 2022  
Wilmington, Delaware

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
pkeane@pszjlaw.com

-and

QUINN EMANUEL URQUHART & SULLIVAN LLP
Bennett Murphy
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: bennettmurphy@quinnemanuel.com

*Counsel to Foresite Capital Fund IV, L.P.*