**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| GENAPSYS, INC.,[1] | Case No. 22-10621(BLS) |
| Debtor. | **Re: Docket Nos. 54, 175, 198 & 233** |

**ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT
BETWEEN SELLER AND BUYER, (II) AUTHORIZING THE SALE OF THE
DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS, AND LEASES IN CONNECTION
THEREWITH AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the *Motion of the Debtor for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtor's Assets, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder and to Provide Bidding Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 54] (the "Sale Motion")[2] filed by the debtor and debtor in possession (the "Debtor") in the above captioned-case (the "Chapter 11 Case") seeking, among other things, the entry of an order (the "Sale Order"), pursuant to sections 105, 363 and 365 of title 11 of the

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is GenapSys, Inc. (3904).  The Debtor's headquarters are located at 200 Cardinal Way, 3rd Floor, Redwood City, CA 94063.

[2] Capitalized terms used herein but not otherwise defined have the meanings given to them in the Asset Purchase Agreement (as defined below) or, if not defined in the Asset Purchase Agreement, the meanings given to them in the Sale Motion.

United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving the sale of the Purchased Assets and the assumption and assignment of certain executory contracts and unexpired leases of the Debtor in connection therewith; and the Court having entered an order [Docket No. 175] (the "Bidding Procedures Order") approving competitive bidding procedures for the Purchased Assets (the "Bidding Procedures") and granting certain related relief; and Sequencing Health, Inc. (the "Buyer") having submitted the highest or otherwise best bid for the Purchased Assets, as reflected in the Asset Purchase Agreement (as defined below); and the Court having conducted a hearing on the Sale Motion (the "Hearing" or the "Sale Hearing") on September 8, 2022, at which time all interested parties were offered an opportunity to be heard with respect to the Sale; and the Court having reviewed and considered (i) the Sale Motion and the exhibits thereto, (ii) the Amended and Restated Asset Purchase Agreement, dated as of August 23, 2022, by and between the Buyer and the Debtor party thereto (the Debtor in such capacity, the "Seller" and together with the Buyer, the "Parties") (as may be amended, restated, amended and restated from time to time, the "Asset Purchase Agreement"), a copy of which is attached hereto as Exhibit A, whereby the Seller has agreed, subject to Court approval, among other things, to sell the Purchased Assets to the Buyer, including, without limitation, the Assumed Contracts that will be assumed and assigned to Buyer on the terms and conditions set forth in the Asset Purchase Agreement, (iii) the Bidding Procedures Order and the record of the hearing before the Court on August 16, 2022 at which the Bidding Procedures Order was approved, (iv) the *Order (I) Authorizing and Approving Entry into Amended and Restated Stalking Horse Agreement and Related Expense Reimbursement in Connection with the Sale of All*

2

*of Substantially All of the Debtor's Assets, and (II) Granting Related Relief* (the "Stalking Horse Order"), whereby the Court approved, among other things, the Buyer's bid as a Qualified Bid; (v) the objections to the Sale Motion that have not been resolved or adjourned and all related pleadings, (vi) the Lansio Declaration [Docket No. 233], and (vii) the record of the Hearing before the Court on September 8, 2022, including the arguments and representations of counsel made, and the evidence proffered or adduced, at the Hearing; and it appearing that due and sufficient notice of the Sale Motion, the Asset Purchase Agreement, the Bidding Procedures Order, and the proposed Sale Order have been provided in accordance with the Bidding Procedures Order; and, except as otherwise provided for herein, all objections to the Sale Motion having been withdrawn, resolved, or overruled as provided in this Sale Order; and, after due deliberation, it appearing that the relief granted herein is in the best interests of the Debtor, its estate, and creditors and all parties in interest in this Chapter 11 Case; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.    **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.  This Sale Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Sale Motion, the Sale and the property of the Debtor's estate, including the Purchased Assets, pursuant to 28 U.S.C.

3

§§ 157(a)-(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) that this Court can decide by a final order under the United States Constitution. Venue of this Chapter 11 Case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     **Statutory and Rule Predicates**. The statutory and other legal predicates for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1.

D.     **Final Order**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the Asset Purchase Agreement. In the absence of a stay pending appeal, Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Sale contemplated by the Asset Purchase Agreement at any time after entry of this Sale Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

E.     **Notice and Opportunity to Object**. Actual written notice of, and a fair and reasonable opportunity to object to and to be heard with respect to the Sale Motion, the Sale, the sale of the Purchased Assets that are owned by the Debtor free and clear of any Claims (as defined below), the assumption and assignment of the Assumed Contracts, the Auction, the Bidding Procedures, and the relief requested in the Sale Motion has been given, as required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Bidding Procedures Order.

F.     **Title to the Purchased Assets**. The Purchased Assets constitute property of the Debtor's estate and good title is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. The Debtor is the sole and rightful owner of the Purchased Assets with

4

all right, title and interest to transfer and convey the Purchased Assets to the Buyer, and no other person has any ownership right, title, or interests therein.

G.    **Sound Business Purpose**.  The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Sale Motion, the Sale, the Asset Purchase Agreement, and all related agreements (the "Related Agreements").  The Debtor's entry into and performance under the Asset Purchase Agreement and Related Agreements: (i) are a result of due deliberation by the Debtor and constitute a sound and reasonable exercise of the Debtor's business judgment consistent with its fiduciary duties; (ii) provide value to and are beneficial to the Debtor's estate, and are in the best interests of the Debtor and its estate, creditors, and other parties in interest; and (iii) are reasonable and appropriate under the circumstances.  The Debtor has demonstrated compelling circumstances for the Sale outside: (i) the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code and (ii) a plan of reorganization, in that, among other things, the immediate consummation of the Sale is necessary and appropriate to preserve and maximize the value of the Debtor's estate.  Business justifications for the Sale include, but are not limited to, the following: (i) the Purchase Price set forth in the Asset Purchase Agreement constitutes the highest or otherwise best offer received for the Purchased Assets; (ii) the Asset Purchase Agreement and the transactions contemplated thereby present the best opportunity to maximize the value of the Purchased Assets, and avoid decline and devaluation of the Purchased Assets that would occur in an immediate liquidation of the Purchased Assets; (iii) unless the Sale and all of the other transactions contemplated by the Asset Purchase Agreement are concluded expeditiously, as provided for pursuant to the Asset Purchase Agreement, recoveries to creditors will be diminished; and (iv) the value of the Debtor's estate will be maximized through the sale of the Purchased Assets pursuant to the Asset Purchase Agreement.

5

H.    **Compliance with Bidding Procedures**.    The Bidding Procedures were substantively and procedurally fair to all parties, including all potential bidders, and were the result of arms'-length negotiations.  Further, the Bidding Procedures afforded notice and a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Purchased Assets.  The Debtor, the Buyer, and each of their respective counsel and other advisors have complied with the Bidding Procedures and Bidding Procedures Order in all respects except as properly waived in the exercise of their fiduciary duties in accordance with such Bidding Procedures.  The Buyer subjected its bid to the competitive Bidding Procedures approved by this Court and the Buyer was found eligible to participate in the Auction, was deemed a Qualified Bidder, and was the Successful Bidder (as defined in the Bidding Procedures) for the Purchased Assets in accordance with the Bidding Procedures Order, the Bidding Procedures and the Stalking Horse Order.

I.    **Sale Process**.  (i) The Debtor and its advisors, including Lazard Frères & Co.  LLC, engaged in a robust and extensive marketing and sale process through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures; (ii) the Debtor and its advisors conducted a fair and open sale process; (iii) the sale process, the Bidding Procedures, and the Auction were non-collusive, duly noticed and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets; and (iv) the process conducted by the Debtor pursuant to the Bidding Procedures obtained the highest or otherwise best value for the Purchased Assets for the Debtor and its estate, and any other transaction would not have yielded as favorable an economic result.

J.    **Fair Consideration; Highest or Best Value**.  The consideration to be paid by the Buyer under the Asset Purchase Agreement: (i) constitutes fair and reasonable consideration for the Purchased Assets; (ii) is the highest or best offer for the Purchased Assets; (iii) will provide a

6

greater recovery for the Debtor's estate and creditors than would be provided by any other practically available alternative; (iv) constitutes fair and reasonably equivalent value and full and adequate consideration, under the Bankruptcy Code and the Uniform Fraudulent Transfer Act; (v) constitutes fair consideration under the Uniform Fraudulent Conveyance Act; and (vi) constitutes reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.  Such consideration constitutes the highest or best bid for the Purchased Assets.  Under the facts and circumstances of this Chapter 11 Case, the Purchase Price for the Purchased Assets is fair and reasonable.  The Purchase Price, including the good and valuable consideration provided in connection with the Sale, constitutes the highest or best bid for the Purchased Assets.

K.  **No Successor or Other Derivative Liability**.  To the fullest extent permitted by law, the sale and transfer of the Purchased Assets of the Debtor to the Buyer, including the assumption by the Debtor and assignment, transfer and/or sale to the Buyer of the Assumed Contracts, will not subject the Buyer, or the investors therein, to any liability (including any successor liability) under any laws, including any bulk-transfer laws, or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories, with respect to the operation of the Debtor's business prior to the Closing, except that, upon the Closing or such other date as specified in the Asset Purchase Agreement, the Buyer shall become liable for the applicable Assumed Liabilities.  The Buyer: (i) is not, and shall not be considered or deemed, a mere continuation of, or successor to, the Debtor in any respect; (ii) has not, *de facto* or otherwise, merged with or into the Debtor; and (iii) is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, the Debtor or its estate, business or operations, or any enterprise of the Debtor and there is no continuity of

7

enterprise between the Debtor and the Buyer.  Accordingly, to the fullest extent permitted by law, the Buyer is not and shall not be deemed a successor to the Debtor or its estate as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement, and except with respect to any Assumed Liabilities or as otherwise set forth in the Asset Purchase Agreement, Buyer's acquisition of the Purchased Assets from the Debtor shall be free and clear of any "successor liability" claims of any nature whatsoever.  Buyer would not purchase the Purchased Assets but for the protections against any claims based upon "successor liability" theories as specified herein.

L.    **<u>Good Faith; No Collusion</u>**.  The Asset Purchase Agreement and the Sale were negotiated, proposed, and entered into by the Debtor, its management, its board of directors or equivalent governing body, and representatives, on the one hand, and the Buyer, its management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers and representatives, on the other, in good faith, without collusion or fraud, and from arms'-length bargaining positions.  The Buyer is a "good faith purchaser" and the Buyer is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby through the date of the Hearing and in closing the proposed transaction.  In the absence of any Person obtaining a stay pending appeal, effective upon the Closing, it shall be deemed that neither the Debtor, Buyer, nor Farallon Capital Management, L.L.C. (together with its Affiliates, "<u>Farallon</u>") has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  The Buyer has proceeded in good faith in all respects in that, among other things: (i) the Buyer and Farallon have recognized that the Debtor was free to deal with any other party in interest in acquiring the Purchased Assets; (ii) the Buyer and Farallon have complied with the applicable provisions of the Bidding Procedures Order; (iii) the Buyer's

8

bid was subjected to competitive Bidding Procedures as set forth in the Bidding Procedures Order; and (iv) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer, Farallon and the Debtor in connection with the Sale have been disclosed and are appropriate.  The sale price in respect of the Purchased Assets was not controlled by any agreement among potential bidders and neither the Debtor, the Buyer, nor Farallon has engaged in collusion, fraud, or any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code or that would prevent the application of section 363(m) of the Bankruptcy Code.  Accordingly, neither the Asset Purchase Agreement nor the Sale may be avoided and no party shall be entitled to damages or other recovery pursuant to section 363(n) of the Bankruptcy Code.  Specifically, neither the Buyer nor Farallon has acted in a collusive manner with any Person or entity.

M. **Notice.**  As evidenced by the certificates of service and publication filed with the Court: (i) due, proper, timely, adequate, and sufficient notice of the Sale Motion, the Bidding Procedures (including the bidding process and the deadline for submitting bids and the Auction), the Sale Hearing, the Sale, the proposed Sale Order the other relief requested in the Sale Motion was provided by the Debtor; (ii) such notice was good, sufficient, and appropriate under the particular circumstances and complied with the Bidding Procedures Order; and (iii) no other or further notice of the Sale Motion, the Sale, the Bidding Procedures, the Sale Hearing, the proposed Sale Order, or any of the relief requested in the Sale Motion is required.

N. **Cure Notice**.  As evidenced by the certificates of service filed with the Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtor has served, prior to the Sale Hearing, the Assumption and Assignment Notice (as defined in the Bidding Procedures Order) and notice of amendment thereto on each Counterparty to a Contract, dated August 17, 2022 and August 23, 2022, respectively, which provided the Debtor's intent to assume and assign

9

such Contracts and notice of the related proposed Cure Costs upon each Counterparty to such Contracts. The service of the Assumption and Assignment Notice was timely, good, sufficient, and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Assumed Contracts. *See Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets* [Docket No. 179] and *Notice of Filing of Amendment to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets* [Docket No. 196]; *see also Affidavit of Service* [Docket Nos. 204 & 205]. All Counterparties to the Contracts (to the extent the Contract was listed on the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets* or the *Notice of Filing of Amendment to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets*) have had a reasonable opportunity to object both to the Cure Costs listed on the applicable Assumption and Assignment Notice and to the assumption and assignment of the Assumed Contracts to the Buyer in accordance with the Bidding Procedures Order.

O.    **Satisfaction of Section 363(f) Standards**. Except as expressly provided for in this Sale Order, including paragraph AA.14 of this Sale Order, the Debtor may sell the Purchased Assets free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, mortgages, deeds of trust, pledges, charges, security interests, of whatever kind or nature, rights of first refusal, rights of offset or recoupment, royalties, conditional sales or title retention agreements, hypothecations, preferences, debts, easements, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign domestic governmental entity, taxes (including foreign, state and local taxes),

10

covenants, restrictions, indentures, instruments, leases, options, off-sets, recoupments, claims for reimbursement or subrogation, contribution, indemnity or exoneration, encumbrances and other interests of any kind or nature whatsoever against the Debtor or the Purchased Assets owned by them, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims or claims for taxes of or against any of the Debtor, and any derivative, vicarious, transferee or successor liability claims, alter ego claims, *de facto* merger claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the commencement of this Chapter 11 Case, whether known or unknown, contingent or matured, liquidated or unliquidated, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material statutory or non-statutory, legal or equitable, and whether imposed by agreement, understanding, law, equity or otherwise arising under or out of, in connection with, or in any way related to the Debtor, the Debtor's interests in the Purchased Assets, the operation of the Debtor's business before the effective time of the Closing, pursuant to the Asset Purchase Agreement, or the transfer of the Debtor's interests in the Purchased Assets to the Buyer, and all Excluded Liabilities (collectively, excluding any Assumed Liabilities, the "Claims"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied; provided, however, that, subject to paragraph AA.14 of this Sale Order, nothing herein shall be deemed, or construed as, a ruling or determination by this Court that the Assumed

11

Liabilities encumber the Purchased Assets.  Without limiting the generality of the foregoing, "Claims" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to: (1) any of the employee benefit plans that are not Assumed Contracts, including any Claims related to unpaid contributions or current or potential withdrawal or termination liability; (2) the Worker Adjustment and Retraining Notification Act of 1988; and (3) any of the Debtor's current and former employees.  Those holders of Claims who did not timely object (or who ultimately withdrew their objections, if any) to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Claims who did object that have an interest in the Purchased Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Claims that constitute interests in the Purchased Assets, if any, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale, subject to any defenses of the Debtor.  All Persons having Claims of any kind or nature whatsoever against the Debtor or the Purchased Assets shall be forever barred, estopped and permanently enjoined from creating, perfecting, pursuing, enforcing, attaching, collecting, recovering, or asserting such Claims against the Buyer or any of its assets, property, affiliates, successors, assigns, or the Purchased Assets.

P.    The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets that are owned by the Debtor was not free and clear of all Claims, if the Buyer would, or in the future could, be liable for any such Claims, including, as applicable, certain liabilities related to the Business that will not be assumed by the Buyer, as described in the Asset Purchase Agreement.  A

12

sale of the Purchased Assets owned by the Debtor other than one free and clear of all Claims would adversely impact the Debtor, its estate, and its creditors, and would yield substantially less value for the Debtor's estate, with less certainty than the Sale.

Q.      The total consideration to be provided under the Asset Purchase Agreement reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets owned by the Debtor free and clear of all Claims (including, without limitation, any potential derivative, vicarious, transferee or successor liability claims).

R.      As of the Closing, the transfer of the Purchased Assets of the Debtor to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all rights, title and interest of the Debtor in, and to, the Purchased Assets, free and clear of all Claims.

S.      **Assumption and Assignment of Assumed Contracts**.  The assumption and assignment of the Assumed Contracts are integral to the Asset Purchase Agreement, are in the best interests of the Debtor and its estate, and represent the valid and reasonable exercise of the Debtor's sound business judgment.  Specifically, the assumption and assignment of the Assumed Contracts (i) is necessary to sell the Purchased Assets to the Buyer, (ii) limits the losses suffered by counterparties to the Assumed Contracts, and (iii) maximizes the recoveries to other creditors of the Debtor by limiting the amount of claims against the Debtor's estate by avoiding the rejection of the Assumed Contracts.

T.      **Validity of the Transfer**.  As of the Closing, the transfer of the Purchased Assets to the Buyer will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title and interest of the Debtor in and to the Purchased Assets, free and clear of all Claims against the Debtor.  The consummation of the Sale is legal, valid and properly

13

authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with in respect of the Sale.

U.    **Corporate Power and Authority**.  The Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate or other action of the Debtor, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (iii) upon entry of this Sale Order, needs no consent or approval from any other person to consummate the Sale.

V.    **Valid and Binding Contract**.  The Asset Purchase Agreement is a valid and binding contract between the Debtor and the Buyer and shall be enforceable pursuant to its terms. The Asset Purchase Agreement and Related Agreements were not entered into for the purpose of hindering, delaying, or defrauding the Debtor's present or future creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession or the District of Columbia. Neither of the Debtor nor the Buyer is, or will be, entering into the Asset Purchase Agreement and transactions contemplated therein fraudulently (including with respect to statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing) or for an otherwise improper purpose.  The Asset Purchase Agreement and the Sale itself, and the consummation thereof shall be specifically enforceable against and binding upon (without the requirement to post any bond) the Debtor, and any chapter 7 or chapter 11 trustee appointed in this Chapter 11 Case, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

14

W. **No *Sub Rosa* Plan**. The Sale does not constitute a *de facto* plan of reorganization or liquidation as it does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtor; (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests. Entry into the Asset Purchase Agreement and the Sale neither impermissibly restructures the rights of the Debtor's creditors, nor impermissibly dictates the terms of a chapter 11 plan for the Debtor. Entry into the Asset Purchase Agreement does not constitute a *sub rosa* chapter 11 plan.

X. **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. The sale of the Purchased Assets must be approved and consummated promptly in order to preserve the value of the Purchased Assets. Therefore, time is of the essence in consummating the Sale, and the Debtor and the Buyer intend to close the Sale as soon as reasonably practicable. The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the Asset Purchase Agreement. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to this Sale Order.

Y. **Personally Identifiable Information**. Subject to the terms of this Sale Order, the sale to the Buyer under the Asset Purchase Agreement of any personally identifiable information (as such term is defined in section 101(41A) of the Bankruptcy Code) and private health information about individuals is consistent with the privacy policy of the Debtor in effect on the date of commencement of this Chapter 11 Case, and satisfies the requirements of section 363(b)(1)(A).

Z. **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

15

AA.   **Necessity of Order**.  The Buyer would not consummate the transactions absent the relief provided for in this Sale Order.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    **Motion is Granted**.  The Sale Motion and the relief requested therein to the extent not previously granted by this Court pursuant to the Bidding Procedures Order is granted and approved solely to the extent set forth herein.

2.    **Findings of Fact and Conclusions**.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order and the record of the hearing with respect to the Bidding Procedures Order and Stalking Horse Order are incorporated herein by reference.

3.    **Objections Overruled**.  All objections, to the Sale Motion or the relief requested therein, and any joinders thereto, that have not been withdrawn with prejudice, waived, settled, or otherwise resolved as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits and with prejudice.  Each holder of any Claim against the Debtor, its estate, or any of the Purchased Assets: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such Claim; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.

4.    **Notice.**  Notice of the Sale Motion and the Sale Hearing was adequate, appropriate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and the Bidding Procedures Order.

5.    **Fair Purchase Price**.  The consideration provided by the Buyer under the Asset Purchase Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the

Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

6.  **Approval of the Asset Purchase Agreement**.  Except as expressly provided herein with respect to the assumption and assignment of contracts and leases, the Asset Purchase Agreement, all ancillary documents filed therewith or described therein (including, but not limited to, all ancillary agreements contemplated thereby) and all of the terms and conditions thereof, are hereby approved in all respects.  The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement (including, but not limited to, all ancillary agreements and Related Agreements contemplated thereby) be authorized and approved in its entirety, except as provided herein.

7.  **Consummation of Sale**.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtor, as well as its officers, employees, and agents, are authorized to enter into, execute, deliver, and perform their obligations under and comply with the terms of the Asset Purchase Agreement and the Related Agreements and to close and consummate the Sale, including by taking any and all actions as may be reasonably necessary or desirable to implement the Sale and each of the transactions contemplated thereby pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, the Related Agreements, and this Sale Order.

8.  The Debtor and its officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement all additional instruments and documents that may be necessary or desirable to implement the Asset Purchase Agreement and Related Agreements, including the transfer and the assignment of all the Purchased Assets, and the assumption and assignment of all the Assumed Contracts, and to take all further actions as

17

may be (i) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to the Buyer's possession, the Purchased Assets or (ii) necessary or appropriate to the performance of the obligations contemplated by the Asset Purchase Agreement or to implement the Sale, including pursuant to this Sale Order, all without further order of the Court.

9.      All Persons that are currently in possession of some or all of the Purchased Assets are hereby directed to surrender possession of such Purchased Assets to the Buyer as of the Closing or at such later time as the Buyer reasonably requests.

10.     All Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Purchased Assets owned by the Debtor to the Buyer in accordance with the Asset Purchase Agreement and this Sale Order; provided that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order.

11.     The Buyer has provided or will provide, as applicable, adequate assurance of future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.

12.     **<u>Direction to Creditors and Parties in Interest</u>**.  On the Closing, each of the Debtor's creditors and the holders of any Claims are authorized and directed to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Claims in the Purchased Assets, if any, as such Claims may otherwise exist; *provided, however*, that (i) this paragraph 12 shall not apply to the Prepetition Liens or the Prepetition Loan Obligations,  as each of those terms is defined in the *Final Order (I) Authorizing Debtor to (A) Use Cash Collateral and (B) Grant Adequate Protection; (II) Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Grant Liens and Superpriority Administrative Expense Claims;*

18

*(III) Modifying Automatic Stay; and (IV) Granting Related Relief* [Docket No. 173] (the "DIP Order"), which are treated in accordance with the Asset Purchase Agreement and the exhibits thereto (including the Amended and Assumed Loan Agreement, as defined below), and (ii) in accordance with section 3.2 of the Asset Purchase Agreement, at the Closing the Debtor and the Buyer are authorized and directed to pay, by wire transfer of immediately available funds, directly to the DIP Administrative Agent (as defined in the DIP Order) the portion of the Cash Purchase Price sufficient to satisfy in full the DIP Obligations (as defined in the DIP Order).

13.    **Direction to Government Agencies**.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other person and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets, is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Asset Purchase Agreement and approved by this Sale Order.

14.    **Transfer of the Purchased Assets Free and Clear**.  Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtor is authorized to transfer the Purchased Assets in accordance with the terms of the Asset Purchase Agreement and this Sale Order.  The Purchased Assets shall be transferred to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Sale Order, and upon the Closing, such transfer shall: (i) be valid, legal, binding, and effective; (ii) vest the Buyer with all right, title and interest of the Debtor in the Purchased Assets; and (iii) be free and clear of all Claims against the Debtor and the Purchased Assets (including Claims of any Governmental Authority), with the Prepetition Loans to become the obligation of the Buyer, as modified in accordance with the Amended and Assumed Loan

19

Documents (as defined below) (the "Assumed Oxford Indebtedness"), and all other Claims (including, without limitation, contingent indemnification obligations) that represent interests in property shall attach to the net proceeds of the Sale, in the same order of their priority and with the same validity, force and effect which they now have against the Purchased Assets, subject to any claims and defenses the Debtor may possess with respect thereto, in each case immediately before the Closing.  The Assumed Oxford Indebtedness is an Assumed Liability under the Asset Purchase Agreement, and, accordingly, the Prepetition Liens and the Prepetition Loan Obligations, as modified by the Amended and Assumed Loan Documents, are assumed by the Buyer, in accordance with section 363(f) of the Bankruptcy Code.   At Closing, the Prepetition Loan Obligations shall be assumed by, and become the obligation of, the Buyer, pursuant to, and in accordance with, the terms of (1) an amendment and restatement of the Prepetition Loan Agreement (as defined in the DIP Order), which shall be assigned to and assumed by the Buyer (such amended Prepetition Loan Agreement, the "Amended and Assumed Loan Agreement") and (2) and such other definitive agreements, documents and instruments (including, as applicable, the related notes, security agreements, collateral agreements, pledge agreements, control agreements, guarantees and mortgages) as are, in each case, usual and customary for financings of this type, necessary or desirable to effectuate the financing contemplated by the Amended and Assumed Loan Agreement and/or otherwise reasonably required by the Prepetition Agent, including, without limitation, customary expense reimbursement and indemnification provisions consistent with such provisions as set forth in the Prepetition Loan Agreement, all in accordance with the terms set forth herein (such agreements, documents and instruments, together with the Amended and Assumed Loan Agreement, collectively, the "Amended and Assumed Loan Documents"); provided, that, each Amended and Assumed Loan Document shall be in form and substance satisfactory to the Prepetition Agent and the Buyer.

15.     This Sale Order: (i) shall be effective as a determination that, as of the Closing, all Claims against the Debtor have been unconditionally released, discharged and terminated as to the Purchased Assets, and that the conveyances and transfers described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Purchased Assets free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers").  All Recording Officers are authorized to strike recorded Claims against the Purchased Assets owned by the Debtor recorded prior to the date of this Sale Order.  A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded Claims against the Purchased Assets recorded prior to the date of this Sale Order.  All Recording Officers are hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

16.     Following the Closing, no holder of any Claim against the Debtor or its estate shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim or based on any actions the Debtor may take in this Chapter 11 Case.

17.     To the fullest extent permitted by applicable law, except as expressly set forth herein or in the Asset Purchase Agreement, neither the Buyer, the investors therein, nor any of their successors and assigns shall have any liability for any Claim against the Debtor or the Debtor's estate or Excluded Liabilities, whether known or unknown as of the Closing Date, now

21

existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee, successor, alter ego, or otherwise, of any kind, nature or character whatsoever, by reason of any theory of law or equity, including Claims or Excluded Liabilities arising under, without limitation: (i) any employment or labor agreements or the termination thereof relating to the Debtor; (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to the Debtor or the Debtor's predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (iii) the Debtor's business operations or the cessation thereof; (iv) any litigation involving the Debtor; and (v) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to: (A) the Employee Retirement Income Security Act of 1974, as amended; (B) the Fair Labor Standards Act; (C) Title VII of the Civil Rights Act of 1964; (D) the Federal Rehabilitation Act of 1973; (E) the National Labor Relations Act; (F) the Worker Adjustment and Retraining Notification Act of 1988; (G) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (H) the Americans with Disabilities Act of 1990; (I) the Consolidated Omnibus Budget Reconciliation Act of 1985; (J) the Multiemployer Pension Plan Amendments Act of 1980; (K) state and local discrimination laws; (L) state and local unemployment compensation laws or any other similar state and local laws; (M) state workers' compensation laws; (N) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with the Debtor or any predecessors; (O) any antitrust laws; (P) any product liability or similar laws, whether state or federal or otherwise; (Q) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and

22

Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (R) any bulk sales or similar laws; (S) any federal, state or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (T) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability.

18.     If any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Debtor or the Purchased Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or, as appropriate, releases of all Claims (collectively, the "Release Documents") the Person has with respect to the Debtor or the Purchased Assets or otherwise, then with regard to the Purchased Assets that are purchased by the Buyer pursuant to the Asset Purchase Agreement and this Sale Order: (i) the Buyer is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person with respect to the Purchased Assets; (ii) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Purchased Assets; and (iii) the Buyer may seek in this Court or any other court to compel appropriate persons to execute termination statements, instruments of satisfaction, and releases of all Claims with respect to the Purchased Assets other than liabilities expressly assumed under the Asset Purchase Agreement; provided that, notwithstanding anything in this Sale Order or the Asset Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Seller nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  This Sale Order is deemed to be in

23

recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

19.      On the Closing Date, and subject to the terms of this Sale Order, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer by the Debtor of the Purchased Assets acquired under the Asset Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in all of the Debtor's right, title, and interest in and to the Purchased Assets to the Buyer.

20.      **No Successor or Other Derivative Liability**.  By virtue of the Sale, to the fullest extent permitted by law, neither the Buyer, the investors therein, nor any of their respective Affiliates, successors and assigns shall be deemed or considered to: (i) be a legal successor, or otherwise be deemed a successor to the Debtor; (ii) have, *de facto* or otherwise, merged with or into the Debtor; (iii) be consolidated with the Debtor or its estate; or (iv) be an alter ego or a continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtor or its estate, business or operations, or any enterprise of the Debtor, in each case by any law or equity, neither the Buyer, the investors therein, nor any of their respective Affiliates, successors and assigns have assumed nor are they in any way responsible for any liability or obligation of the Debtor or the Debtor's estate, except with respect to the Assumed Liabilities.  To the fullest extent permitted by law, except as expressly set forth in the Asset Purchase Agreement, neither the Buyer, the investors therein, nor any of their respective Affiliates, successors and assigns shall have any successor, transferee or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether

24

asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes or other Governmental Authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of the Purchased Assets prior to the Closing Date or arising based on actions of the Debtor taken after the Closing Date.

21.    **Assumption and Assignment of Assumed Contracts**.    Conditioned upon the occurrence of the Closing, the Debtor is hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to the Buyer free and clear of all Claims to the extent set forth in this Sale Order, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Buyer as provided in the Asset Purchase Agreement.    With respect to each of the Assumed Contracts, the Buyer, in accordance with the provisions of the Asset Purchase Agreement, has cured or will cure before the Closing Date or have provided adequate assurance of the prompt cure after the Closing of any monetary default required to be cured with respect to the Assumed Contracts under section 365(b)(1) of the Bankruptcy Code, and the Buyer has provided adequate assurance of future performance under the Assumed Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the non-Debtor counterparties to such Assumed Contracts.    Upon the Closing Date, the Buyer shall be fully and irrevocably vested with all rights, title and interest of the Debtor under each Assumed Contract.    Buyer acknowledges and agrees that from and after the Closing Date with respect to an Assumed Contract, subject to and in accordance with the Asset Purchase Agreement, it shall comply with the terms of each of such Assumed Contract in its entirety, unless any such provisions are not enforceable pursuant to the terms of this Sale Order,

25

or unless the Debtor and the non-Debtor counterparty agree otherwise.  The assumption by the Debtor and assignment to the Buyer of any Assumed Contract shall not be a default under such Assumed Contract.  In accordance with the terms of the Asset Purchase Agreement, with respect to liabilities from any Assumed Liabilities including in respect of the Assumed Contracts, Buyer shall not be obligated to make any payments in respect of such liabilities (subject to paragraph 22) until the later of: (i) the Closing Date; (ii) the date that the applicable obligation thereunder becomes due in the ordinary course of business; and (iii) any later date agreed to by the Buyer and the applicable non-Debtor counterparty.

22.    Provided that assumption of an Assumed Contract has been approved by the Bankruptcy Court, all Cure Costs that have not been waived by, or as to which an objection has been filed by, or that have not been otherwise addressed in an alternate arrangement with, any non-Debtor party to an Assumed Contract shall be: (i) paid in cash by the Seller, on or before the Closing Date as to the undisputed amounts and (ii) reserved against the establishment of a cash reserve as to any disputed cure amounts by Buyer two (2) business days after the Closing Date (a "Cure Cost Reserve") and paid promptly upon resolution of any such disputed Cure Cost; provided that to the extent a new agreement by and between the Buyer and the counterparty to the applicable Assumed Contract is entered into, such agreement shall provide for the Buyer's payment of applicable Cure Costs in an amount agreed to by the Buyer and the counterparty.  Payment of Cure Costs as required under section 365(b) of the Bankruptcy Code with respect to the Assumed Contracts, shall: (i) be in full satisfaction and cure of any and all defaults under these Assumed Contracts, whether monetary or non-monetary; and (ii) compensate the non-Debtor counterparty for any actual pecuniary loss resulting from such defaults.

23.    The Debtor served all counterparties to the Assumed Contracts, with an Assumption and Assignment Notice and the deadline to object to the Cure Costs and adequate

26

assurance of future performance with respect to the Buyer has passed. Accordingly, unless an objection to the proposed Cure Costs or Adequate Assurance Information with respect to the Buyer was filed and served before the applicable deadline, each non-Debtor party to an Assumed Contract listed on Exhibit B hereto is forever barred, estopped and permanently enjoined from asserting against the Debtor or the Buyer, their affiliates, successors or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing.

24.    Nothing in this Sale Order shall affect the rights of the Buyer, to the extent such rights are provided in the Asset Purchase Agreement, to add or remove any Desired Contract from or to the list of Assumed Contracts set forth in the Asset Purchase Agreement in accordance with the terms thereof. All of the requirements of sections 365(b) and 365(f), including without limitation, the demonstration of adequate assurance of future performance and Cure Costs required under the Bankruptcy Code have been satisfied for the assumption by the Debtor, and the assignment by the Debtor to the Buyer, with respect to the Assumed Contracts. The Buyer has satisfied its adequate assurance of future performance requirements with respect to the Assumed Contracts and in connection therewith has presented sufficient evidence regarding the Buyer's business plan and demonstrated it is sufficiently capitalized to comply with the necessary obligations under the Assumed Contracts.

25.    To the extent a counterparty to an Assumed Contract failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as of the Debtor's filing of the Assumption and Assignment Notice and any such counterparty shall be barred, and forever prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost as of such dates.

RLF1 27925399v.2

26.     Upon the Closing Date, any provision in any Assumed Contract that purports to declare a breach or default as a result of a change or transfer of control or any interest in respect of the Debtor is unenforceable and all Assumed Contracts shall remain in full force and effect notwithstanding assignment thereof. No sections or provisions of any Assumed Contracts, that in any way purport to: (i) prohibit, restrict, or condition the Debtor's assignment of such Assumed Contract (including, but not limited to, the conditioning of such assignment on the consent of any non-Debtor party to such Assumed Contract); (ii) provide for the cancellation, or modification of the terms of the Assumed Contract based on the filing of a bankruptcy case, the financial condition of the Debtor, or similar circumstances; (iii) provide for additional payments (e.g., so called "profit" sharing/splitting), penalties, fees, charges, or other financial accommodations in favor of the non-Debtor third party to such Assumed Contract upon assignment thereof; or (iv) provide for any rights of first refusal on a contract counterparty's part, or any recapture or termination rights in favor of a contract counterparty, because they constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code.

27.     **_Ipso Facto_ Clauses Ineffective**. Except as otherwise specifically provided for by order of this Court or the Asset Purchase Agreement, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer or, in accordance with their respective terms, including all obligations of the Buyer notwithstanding any provision in any such Assumed Contracts (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer. There shall be no, and all non-Debtor parties to any Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtor or the Buyer, any defaults, breach, claim, pecuniary loss, rent accelerations, escalations, assignment fees, increases or any

28

other fees charged to the Buyer or the Debtor as a result of the assumption or assignment of the Assumed Contracts or the Closing.

28.　　Except as otherwise specifically provided for by order of this Court, upon the Debtor's assignment of the Assumed Contracts to the Buyer under the provisions of this Sale Order and full payment of all Cure Costs as required under section 365(b) of the Bankruptcy Code, no default shall exist under any Assumed Contracts, and no counterparty to any Assumed Contracts shall be permitted to declare a default by any Debtor or the Buyer or otherwise take action against the Buyer as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assumed Contract.  Any provision in an Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, refuse to renew, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect solely in connection with the transfer thereof pursuant to this Sale Order.  The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's and the Buyer's rights to enforce every term and condition of the Assumed Contract.

29.　　For the avoidance of doubt, nothing in the foregoing paragraphs 22-29 of this Sale Order shall apply to the Prepetition Loan Documents (as defined in the DIP Order).  Such assumption shall be on the terms set forth in the Amended and Assumed Loan Documents.

30.　　**Release of Buyer**.  Subject to and upon the Closing Date, the Debtor hereby waives any and all actions related to, and hereby releases, the Buyer, the property of the Buyer (including, without limitation, the Purchased Assets), and, as applicable the Buyer's affiliates, shareholders, controlling Persons, directors, agents, officers, subsidiaries, affiliates, successors, assigns,

29

managers, principals, officers, employees, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in their respective capacity as such, from, any and all Claims of any kind, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, or to the extent the Claims arise under or are related to the sale process; *provided* that the foregoing shall not release any obligations assumed or established by the Buyer under the Asset Purchase Agreement or this Sale Order.

31.    **Lazard**.  Any transaction or success fee payable to Lazard on account of the Sale pursuant to the terms of its engagement letter with the Debtor will, subject to the terms of such engagement letter and any order of this Court entered with respect thereto, be allowed as an administrative expense pursuant to section 330 and 503(b) of the Bankruptcy Code, provided any such fee shall only be due and payable to Lazard upon approval of a fee application of Lazard seeking approval of such sale or transaction fee.

32.    **Statutory Mootness**.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.  The Sale contemplated by the Asset Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale shall neither affect the validity of the Sale nor the transfer of the Purchased Assets owned by the Debtor to the Buyer, free and clear of Claims, unless such authorization is duly stayed before the Closing of the Sale pending such appeal.  The Debtor and the Buyer will be acting in good faith if they proceed to consummate the Sale at any time after entry of this Sale Order.

30

33.     **No Avoidance of Asset Purchase Agreement**.  Neither the Debtor nor the Buyer, Farallon or their respective affiliates or representatives have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the Asset Purchase Agreement and the Sale shall not be avoidable under section 363(n) or chapter 5 of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Asset Purchase Agreement or the Sale.

34.     **Waiver of Bankruptcy Rules 6004(h), 6006(d), and 7062**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale and the Debtor and the Buyer intend to close the Sale as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal will be foreclosed as moot.  This Sale Order constitutes a final order upon which the Debtor and the Buyer are entitled to rely.

35.     **Conversion or Dismissal Order**.  If any order under section 1112 of the Bankruptcy Code is entered in the case, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that this Sale Order, including the rights granted to Buyer hereunder, shall remain effective and, notwithstanding such conversion or dismissal, shall remain

31

binding on parties in interest.  This Sale Order shall not be modified by any chapter 11 plan confirmed in the case or by any subsequent orders of the Court.

36.    **Binding Effect of Sale Order**.  The terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate and its creditors, any affected third parties, all holders of equity interests in the Debtor, all holders of any claims, whether known or unknown, against the Debtor, any holders of Claims against or on all or any portion of the Purchased Assets owned by the Debtor, including, but not limited to all contract counterparties, leaseholders, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar entities for the Debtor, if any, subsequently appointed in this Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of this Chapter 11 Case, and each of their respective affiliates, successors and assigns.  The Asset Purchase Agreement and the Sale Order shall inure to the benefit of the Debtor, its estate and creditors, the Buyer and its respective successors and assigns.  The Asset Purchase Agreement, the Sale and this Sale Order shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors or any trustee, examiner or receiver.

37.    **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in this Sale Order, the Asset Purchase Agreement and any documents executed in connection therewith shall govern, in that order.  Nothing contained in any chapter 11 plan hereafter confirmed in this Chapter 11 Case, any order confirming such plan, or in any other order of any type or kind entered in this Chapter 11 Case (including, without limitation, any order entered after any conversion of any or all of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

32

38.   **Modification of Asset Purchase Agreement**.  The Asset Purchase Agreement and Related Agreements, documents or other instruments executed in connection therewith, may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not materially change the terms of the Asset Purchase Agreement or Related Agreements, documents or other instruments.

39.   **Bulk Sales; Taxes**.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Asset Purchase Agreement, the Sale Motion or this Sale Order.  Except as otherwise expressly provided in the Asset Purchase Agreement, all obligations of the Debtor relating to taxes, whether arising under any law, by the Asset Purchase Agreement, or otherwise, shall be the obligation of and fulfilled and paid by the Debtor.

40.   **Lease Deposits and Security**.  The Buyer shall not be required, pursuant to section 365(1) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any Assumed Contract to the extent not previously provided by the Debtor.

41.   **Automatic Stay**.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement, and Related Agreements, documents or other instruments.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Sale Order.

42.   **Cigna**.  Notwithstanding anything to the contrary in this Sale Order, or any Notice related thereto, the Cigna Employee Benefits Agreements (as defined in the *Objection of Cigna to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets* [Docket No. 208] (the "Cigna

33

Objection")) shall be assumed and assigned to the Buyer as of the Closing Date, and, in lieu of cure, all obligations due and unpaid under the Employee Benefits Agreements accruing prior to the Closing Date shall pass through and survive assumption and assignment, and nothing in this Sale Order or section 365 of the Bankruptcy Code shall affect such obligations. This fully resolves the Cigna Objection.

43.    **LINA**. Notwithstanding anything to the contrary in this Sale Order, or any Notice related thereto, the Policies (as defined in the *Objection of Life Insurance Company of North America to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets* [Docket No. 209] (the "LINA Objection")) shall be assumed and assigned to the Buyer as of the Closing Date, and, in lieu of cure, all obligations due and unpaid under the Policies accruing prior to the Closing Date shall pass through and survive assumption and assignment, and nothing in this Sale Order or section 365 of the Bankruptcy Code shall affect such obligations. This fully resolves the LINA Objection.

44.    **Navia**.  Notwithstanding anything herein to the contrary, with respect to the *Administrative Services Agreement* effective January 1, 2022 by and between the Debtor and Navia Benefit Solutions, Inc. ("Navia") [See Docket No. 196], the Buyer agrees that after the Closing Date, Navia shall submit and Buyer shall reimburse employee claim reimbursement requests with respect to the 2022 plan year without respect to when during the year the claim arose, was submitted to Navia, or was submitted by Navia to Buyer.

45.    **Oracle**. Notwithstanding anything to the contrary in this Sale Order or the Asset Purchase Agreement, no contract between the Debtor and Oracle America, Inc., successor in interest to NetSuite, Inc., ("Oracle") will be assumed and/or assigned without: (a) Oracle's prior written consent; (b) cure of any default under such contract; and (c) execution by the Debtor (or

34

its successor) and the Buyer of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Sale Order. In addition, no provision of this Sale Order, the Asset Purchase Agreement or any transition services agreement between the Debtor and the Buyer shall authorize (1) the transfer of any Oracle license agreement to any third party; or (2) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent.

46.    **Foresite**. In accordance with Section 7.6 of the Asset Purchase Agreement, the Debtor shall retain archived copies of all documents, consistent with the Debtor's document preservation obligations, that are potentially relevant to the action captioned *Foresite Capital Fund IV, L.P. v GenapSys, Inc. and Hesaam Esfandyarpour, Ph.D.*, Case No. 20CV367605, pending in the Superior Court of the State of California, County of Santa Clara (the "Potentially Relevant Records"). The Debtor (or any successor thereto) shall not destroy any Potentially Relevant Records absent a further order of this Court.

47.    **Name Change**. The Debtor is authorized to change its current name pursuant to section 7.2 of the Asset Purchase Agreement.

48.    **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to this Sale Order or the Asset Purchase Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

49.    **Governmental Units**. Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit

35

under police and regulatory statutes or regulations (including but not limited to environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or in the Asset Purchase Agreement shall in any way diminish the obligation of any entity, including the Debtor, to comply with environmental laws.  Nothing in this Order or the Asset Purchase Agreement authorizes the transfer to the Buyer of any licenses, permits, registrations, or governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**

Dated: September 12th, 2022
Wilmington, Delaware

36