**Exhibit B**

**Moss Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Redwood Liquidating Co.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10621 (BLS) |

**DECLARATION OF DANA MOSS IN SUPPORT OF SECOND OMNIBUS OBJECTION (SUBSTANTIVE) OF THE DEBTOR TO CERTAIN (I) MISCLASSIFIED CLAIMS AND (II) NO LIABILITY CLAIMS**

I, Dana Moss, make this declaration under 28 U.S.C. § 1746:

1. I am the former General Counsel and Secretary of Redwood Liquidating Co., the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), and a consultant to the Debtor.

2. I held my position with the Debtor from May 2021 through the Closing Date. Since the Closing Date, I have been assisting the Debtor and its Chief Wind-Down Officer in connection with the Chapter 11 Case. Prior to joining the Debtor, I was a Partner at Cooley LLP, where I focused my practice on commercial litigation, including bankruptcy litigation for over 10 years. Prior to that, I served as an officer in the United States Air Force and conducted criminal and counterintelligence investigations. I hold a Juris Doctorate from the University of Maryland Francis King Carey School of Law, a Master of Arts degree from the University of Texas at Austin, and a Bachelor of Science degree from the United States Air Force Academy.

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is Redwood Liquidating Co. (3904). The Debtor's service address in this Chapter 11 case is 10385 Westmoor Dr. #100, Westminster, Colorado 80021.

3. As a result of my tenure with the Debtor, I am familiar with the day-to-day operations and business, books and records, and financial affairs of the Debtor. All facts set forth in this declaration (the "Declaration") are based on my personal knowledge, my communications with other members of the Debtor's senior management and the Debtor's advisors, my review of relevant documents, including each of the Disputed Claims, or my opinion, based on my overall professional experience, in light of my personal knowledge of the Debtor's operations, business affairs, and financial condition. If called as a witness, I could and would competently testify to the matters set forth herein based on the foregoing.

4. I submit this Declaration in support of the *Second Omnibus Objection (Substantive) of the Debtor to Certain (I) Misclassified Claims and (II) No Liability Claims* (the "Objection").[2]

5. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtor. I am not being specifically compensated for this testimony.

**A. Misclassified Claims**

6. Each of the Misclassified Claims listed on Schedule 1 to the Proposed Order asserts general unsecured claims based on amounts that should be subordinated pursuant to section 510(b) of the Bankruptcy Code.

7. On June 17, 2019, the Debtor and Foresite Capital Fund IV, L.P. ("Foresite Capital Fund," and together with its affiliates, "Foresite") entered into that certain Series C Preferred Stock Purchase Agreement (the "Series C Purchase Agreement") pursuant to which, among other things, Foresite agreed to purchase certain Series C Preferred Equity Interests issued by the Debtor.

8. On June 15, 2020, Foresite filed a complaint in Santa Clara County Superior Court asserting claims arising out of and related to the Series C Purchase Agreement (the "California

---

[2] Capitalize terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Objection.

Action"). On March 18, 2022, Foresite amended its complaint in the California Action (the "Amended Complaint"). The Amended Complaint alleges, among other things, that the Debtor and its founder, Dr. Hessam Esfandyarpour ("Dr. Esfandyarpour"): (i) made certain false or misleading representations to induce Foresite to enter into the Series C Purchase Agreement, (ii) violated certain California Securities laws by making such alleged false or misleading misrepresentations, and (iii) breached the Series C Purchase Agreement and related investor agreements by, among other things, failing to provide Foresite with certain information about the Debtor. On September 10, 2020, the Debtor filed a cross-complaint (the "Cross-Complaint") in the California Action and amended the Cross-Complaint on February 16, 2021 for claims arising out of the California Action.

9. Each of the Misclassified Claims is filed by a claimant within Foresite and asserts amounts based on, or arising out of, the Amended Complaint and/or Foresite's purchase of Series C Preferred Equity Interests.

10. **Foresite Capital Fund IV, L.P. – Claim No. 92**: Foresite Capital Fund asserts a collection of general unsecured claims in an amount in excess of $50 million for, among other things, fraud, breach of contract, breach of the covenant of good faith, and rescission arising from Foresite Capital Fund's investment in the Debtor under the Series C Purchase Agreement, pursuant to which Foresite Capital Fund invested $50 million in the Debtor in exchange for receiving Series C Preferred Equity Interests. After a review of the proof of claim, the Series C Purchase Agreement, the California Action, the Amended Complaint, and the Cross-Complaint, I believe that Claim No. 92 asserts claims for damages arising from the purchase of sale of a security as contemplated by section 510(b) of the Bankruptcy Code. Accordingly, Claim No. 92 should be

reclassified and subordinated as a Series C 510(b) Claim under the Combined Disclosure Statement and Plan.

11.  **Foresite Capital Management LLC – Claim No. 97**: Foresite Capital Management LLC ("Foresite Capital Management"), the fund manager for Foresite Capital Fund, asserts a general unsecured claim in an amount in excess of $10,000,000 for fraudulent inducement and malicious prosecution arising from Foresite Capital Fund's investment in the Debtor under the Series C Purchase Agreement. After a review of the proof of claim, the Series C Purchase Agreement, the California Action, the Amended Complaint, and the Cross-Complaint, I believe that Claim No. 97 asserts claims for damages arising from the purchase or sale of a security as contemplated by section 510(b) of the Bankruptcy Code. Indeed, the claim itself indicates that Foresite Capital Management's investments suffered losses as a result of Foresite Capital Fund's investment in the Debtor through its purchase of Series C Preferred Equity Interests. Accordingly, Claim No. 97 should be reclassified and subordinated as a Series C 510(b) Claim under the Combined Disclosure Statement and Plan.

12.  **Tananbaum, James – Claim No. 101**: Dr. James Tananbaum ("Dr. Tananbaum"), the chief executive officer of Foresite Capital Management, asserts a general unsecured claim in an amount in excess of $10,000,000 for fraudulent inducement and malicious prosecution arising from Foresite Capital Fund's investment in the Debtor under the Series C Purchase Agreement. After a review of the proof of claim, the Series C Purchase Agreement, the California Action, the Amended Complaint, and the Cross-Complaint, I believe that Claim No. 101 asserts claims for damages arising from the purchase or sale of a security as contemplated by section 510(b) of the Bankruptcy Code. Indeed, the claim itself indicates that Dr. Tananbaum and the Foresite entities suffered losses as a result of Foresite Capital Fund's investment in the Debtor through its purchase

of Series C Preferred Equity Interests. Accordingly, Claim No. 101 should be reclassified and subordinated as a Series C 510(b) Claim under the Combined Disclosure Statement and Plan.

13. Based on the foregoing, I believe that the Misclassified Claims should be reclassified and subordinated as detailed on Schedule 1 attached to the Proposed Order because such claims arise out of the sale of equity securities of the Debtor. Failure to reclassify and subordinate the Misclassified Claims would result in the relevant claimants receiving an unwarranted recovery against the Debtor by permitting them to get a recovery that shareholders are not entitled to under the Combined Disclosure Statement and Plan. As such, I believe the reclassification and subordination of the Misclassified Claims on the terms set forth in the Objection is appropriate.

**B. No Liability Claims**

14. The following claimants assert claims for which the Debtor has no liability:

15. **Baker & McKenzie LLP – Claim No. 28**: Baker & McKenzie LLP ("Baker McKenzie") asserts a general unsecured claim in the amount of $453,481.83 for certain legal services. The legal services were performed on behalf of the Debtor's former chief executive officer, Dr. Esfandyarpour. The legal services were not performed on behalf of the Debtor, the Debtor never engaged Baker McKenzie, and after a review of its books and records and the proof of claim, the Debtor has determined that it is not liable for Baker McKenzie's legal services provided to Dr. Esfandyarpour. Accordingly, the Debtor has no liability for Claim No. 28.

16. **Darius HE Trust or The Goldman Sachs Trust Company of Delaware as Trustee of the Darius HE Trust – Claim No. 102**: Darius HE Trust or The Goldman Sachs Trust Company of Delaware as Trustee of the Darius HE Trust (the "HE Trust") asserts a general unsecured claim in the amount of at least $10,000,000 for, among other things, a stock purchase

and transfer agreement, services performed, intellectual property rights and other contracts. Dr. Esfandyarpour is the grantor of the HE Trust, and Claim No. 102 is duplicative of claim numbers 82, 85 and 87 filed by Dr. Esfandyarpour. In addition, as set forth in the *First Omnibus Objection (Non-Substantive) of the Debtor to Certain (I) Equity Interest Claims, (II) Amended and Superseded Claims, and (III) Duplicate Claims* (the "First Omnibus Objection"), filed contemporaneously herewith, no less than $20,475,000 relating to Claim No. 102 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. Further, Claim No. 102 does not attach any documentation supporting its claims for services, intellectual property rights and other contracts, and the Debtor is not aware of the existence of any valid agreements substantiating any such claims. Further, after a review of its books and records, the Debtor has determined that there are no amounts due and owing to the HE Trust for any claims. Accordingly, the Debtor has no liability for Claim No. 102.

17. **Esfandyarpour, Ph.D., Hesaam – Claim No. 82**: Dr. Esfandyarpour asserts a claim in the amount of at least $327,750.00 for, among other things, a consulting agreement, dated November 28, 2020 (the "Consulting Agreement"), intellectual property rights, other contracts, advancement and indemnification and equity interests. The claim asserts $15,150 as a priority wage claim and all remaining amounts as a general unsecured claim. Dr. Esfandyarpour also asserts that the claim is secured through purported setoff rights, but the claim is not otherwise secured. The Consulting Agreement provides, among other things, that Dr. Esfandyarpour shall provide those services listed on Exhibit A thereto, as and when requested by the Debtor's chief executive officer. To the extent services are performed, Dr. Esfandyarpour would be entitled to a maximum of $34,500 per month. In April 2022, the Debtor's chief executive officer no longer utilized the services of Dr. Esfandyarpour under the Consulting Agreement. Accordingly, from

6

April 2022 onward, Dr. Esfandyarpour has not been entitled to any compensation under the Consulting Agreement. After a review of its books and records, all amounts due and owing to Dr. Esfandyarpour as of May 2022 have been paid and no amounts were due and owing as of the Petition Date. By the addendum appended to Claim No. 82, Dr. Esfandyarpour also asserts claims for advancement and indemnification, intellectual property rights, and other contracts and equity interests that are asserted in other claims filed by Dr. Esfandyarpour. With respect to Dr. Esfandyarpour's purported intellectual property rights, after a review of the Debtor's books and records, the Debtor has confirmed that Dr. Esfandyarpour has no such rights in any intellectual property owned by the Debtor and there exists no valid agreements entitling Dr. Esfandyarpour to any recovery in connection with the Debtor's intellectual property. Further, as set forth in the Debtor's First Omnibus Objection, Dr. Esfandyarpour's asserted equity interest is not a claim under the Bankruptcy Code. Finally, as discussed herein at paragraph 19, Dr. Esfandyarpour's indemnification and advancement claims are not valid claims. As a result of the foregoing, Dr. Esfandyarpour has no claims or setoff rights arising under Claim No. 82, and the Debtor has no liability for Claim No. 82.

18.     **Esfandyarpour, Ph.D., Hesaam – Claim No. 85**: Dr. Esfandyarpour asserts a general unsecured claim in the amount of at least $10,000,000 for, among other things, stock purchase and ownership, services performed, intellectual property rights, and other contracts. Dr. Esfandyarpour also asserts that the claim is secured through purported setoff rights, but the claim is not otherwise secured. With respect to Dr. Esfandyarpour's purported intellectual property rights, after a review of the Debtor's books and records, the Debtor has confirmed that Dr. Esfandyarpour has no such rights in any intellectual property owned by the Debtor and there exists no valid agreements entitling Dr. Esfandyarpour to any recovery in connection with the

Debtor's intellectual property. As set forth in the Debtor's First Omnibus Objection, no less than $45,770,517 relating to Claim No. 85 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. Finally, Claim No. 85 does not attach any documentation supporting its claims for service and other contracts, and the Debtor is not aware of the existence of any valid agreements substantiating any such claims. Further, after a review of its books and records, the Debtor has determined that there are no amounts due and owing to Dr. Esfandyarpour for any claims. As a result of the foregoing, Dr. Esfandyarpour has no claims or setoff rights arising under Claim No. 85, and the Debtor has no liability for Claim No. 85.

19. **Esfandyarpour, Ph.D., Hesaam – Claim No. 87**: Dr. Esfandyarpour asserts a general unsecured claim in the amount of at least $136,077.72 for, among other things, fees demanded in an advancement action, other advancement and indemnification obligations and other contracts. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. With respect to Dr. Esfandyarpour's advancement claim, Dr. Esfandyarpour seeks advancement and recovery of his counsel's fees in connection with the prepetition advancement action that he brought against the Debtor. Under applicable law, Dr. Esfandyarpour is not entitled to fees on fees because the underlying advancement action is meritless and has been contested by the Debtor as such. Indeed, the Delaware Court of Chancery found that the Debtor had advanced all fees that were the subject of the advancement action. With respect to Dr. Esfandyarpour's contingent and unliquidated indemnification claims, the Debtor believes there is no such liability for two reasons. First, with respect to any purported indemnity agreements between the Debtor and Dr. Esfandyarpour, based on a review of its books and records, the Debtor believes that any purported indemnity agreement was improperly authorized, documented and executed and disputes the validity of any such agreement. Second, with respect to any

indemnification arising under, out of or related to the Debtor's indemnification obligation under Section 145 of the Delaware General Corporation Law, after review of its books and records, the Amended Complaint, the Cross-Complaint and the discovery uncovered in connection therewith, the Debtor does not believe that Dr. Esfandyarpour has acted in good faith because, among other things, Dr. Esfandyarpour has taken numerous actions for his benefit at the expense of the Debtor. As such, Dr. Esfandyarpour is not entitled to indemnification under applicable law. Accordingly, the Debtor has no liability for advancement, attorneys' fees, indemnification and any other related claims arising under Claim No. 87.

20. **Esfandyarpour, Ph.D. Majid – Claim No. 103**: Majid Esfandyarpour, Ph.D. ("Dr. Majid Esfandyarpour") asserts a general unsecured claim in the amount of at least $877,500 for, among other things, stock purchase and ownership, services performed, intellectual property rights, and original foundation. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. With respect to Dr. Majid Esfandyarpour's purported intellectual property rights, after a review of its books and records, the Debtor has confirmed that Dr. Majid Esfandyarpour has no such rights in any intellectual property owned by the Debtor and there exists no valid agreements entitling Dr. Majid Esfandyarpour to any recovery in connection with the Debtor's intellectual property. In addition, as set forth in the Debtor's First Omnibus Objection, no less than $877,500 relating to Claim No. 103 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. Further, Claim No. 103 does not attach any documentation supporting its claims, and, after review of its books and records, the Debtor is not aware of the existence of any valid agreements substantiating any such claims, and the Debtor has further determined that there are no amounts due and owing to Dr. Majid Esfandyarpour for any

claims. As a result of the foregoing, Dr. Majid Esfandyarpour has no claims or setoff rights arising under Claim No. 103, and the Debtor has no liability for Claim No. 103.

21. **Esfandyarpour, Ph.D. Rahim – Claim No. 106**: Rahim Esfandyarpour, Ph.D. ("Dr. Rahim Esfandyarpour") asserts a general unsecured claim in the amount of at least $877,500 for, among other things, stock purchase and ownership, services performed, intellectual property rights, and original foundation. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. With respect to Dr. Rahim Esfandyarpour's purported intellectual property rights, after a review of its books and records, the Debtor has confirmed that Dr. Rahim Esfandyarpour has no such rights in any intellectual property owned by the Debtor and there exists no valid agreements entitling Dr. Rahim Esfandyarpour to any recovery in connection with the Debtor's intellectual property. In addition, as set forth in the Debtor's First Omnibus Objection, no less than $877,500 relating to Claim No. 106 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. Further, Claim No. 106 does not attach any documentation supporting its claims, and, after review of its books and records, the Debtor is not aware of the existence of any valid agreements substantiating any such claims, and the Debtor has also determined that there are no amounts due and owing to Dr. Rahim Esfandyarpour for any claims. As a result of the foregoing, Dr. Rahim Esfandyarpour has no claims or setoff rights arising under Claim No. 106, and the Debtor has no liability for Claim No. 106.

22. **Esfandyarpour, Ph.D. Vahid – Claim No. 104:** Vahid Esfandyarpour, Ph.D. ("Dr. Vahid Esfandyarpour") asserts a general unsecured claim in the amount of at least $877,500 for, among other things, stock purchase and ownership, services performed, intellectual property rights, and original foundation. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. With respect to Dr. Vahid Esfandyarpour's purported

intellectual property rights, after a review of its books and records, the Debtor has confirmed that Dr. Vahid Esfandyarpour has no such rights in any intellectual property owned by the Debtor and there exists no valid agreements entitling Dr. Vahid Esfandyarpour to any recovery in connection with the Debtor's intellectual property. In addition, as set forth in the Debtor's First Omnibus Objection, no less than $877,500 relating to Claim No. 104 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. Further, Claim No. 104 does not attach any documentation supporting its claims, and, after review of its books and records, the Debtor is not aware of the existence of any valid agreements substantiating any such claims, and the Debtor has also determined that there are no amounts due and owing to Dr. Vahid Esfandyarpour for any claims. As a result of the foregoing, Dr. Vahid Esfandyarpour has no claims or setoff rights arising under Claim No. 104, and the Debtor has no liability for Claim No. 104.

23. **Parizi, Ph.D., Kosar – Claim No. 83**: Kosar Parizi, Ph.D. ("Dr. Parizi") asserts a general unsecured claim in the amount of at least $313,800 for, among other things, an employment/severance agreement, a retaliation claim, and other contracts and agreements. The claim asserts $15,150 as a priority wage claim and all remaining amounts as a general unsecured claim. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. The addendum attached to the claim addresses Dr. Parizi's severance (the "Severance Claim"), retaliation (the "Retaliation Claim"), advancement, equity interests and purported intellectual property rights. With respect to Dr. Parizi's purported intellectual property rights, after a review of its books and records, the Debtor has confirmed that Dr. Parizi has no such rights in any intellectual property owned by the Debtor and there exists no valid agreements entitling Dr. Parizi to any recovery in connection with the Debtor's intellectual property. In addition, as set forth in the Debtor's First Omnibus Objection, no less than $11,159,378 relating

11

to Claim No. 83 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. With respect to the Severance Claim, the Debtor disputes the validity of any underlying employment and severance agreements because, based upon a review of the Debtor's books and records, the Debtor believes that such documents were improperly authorized, documented and executed. To the extent that such agreements were valid (they are not), Dr. Parizi has breached both the employment agreement and severance agreements by violating their non-disparagement and adverse actions provisions, as applicable. With respect to the Retaliation Claim, the Debtor denies all such assertions raised in the addendum and asserts that its actions were proper. With respect to any advancement and indemnification claims, as of the Petition Date, no claims were due and owing to Dr. Parizi for advancement and/or indemnification. Further, Claim No. 83 does not attach any documentation supporting its claims, and, after review of its books and records, the Debtor is not aware of the existence of any actions or valid agreements substantiating any such claims, and the Debtor has further determined that there are no amounts due and owing to Dr. Parizi for any claims. As a result of the foregoing, Dr. Parizi has no claims or setoff rights arising under Claim No. 83, and the Debtor has no liability for Claim No. 83.

24.     **Parizi, Ph.D., Kosar – Claim No. 90**: Dr. Parizi asserts a general unsecured claim in the amount of at least $10,000,000 for, among other things, stock purchase and ownership, services performed, foundation and building of the business, intellectual property rights, and other contracts. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. With respect to Dr. Parizi's purported intellectual property rights, after a review of its books and records, the Debtor has confirmed that Dr. Parizi has no such rights in any intellectual property owned by the Debtor and there exists no valid agreements entitling Dr. Parizi to any recovery in connection with the Debtor's intellectual property. In addition, as set forth in

the Debtor's First Omnibus Objection, no less than $11,159,378 relating to Claim No. 90 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. Further, Claim No. 90 does not attach any documentation supporting its claims, and, after review of its books and records, the Debtor is not aware of the existence of any valid agreements substantiating any such claims, and the Debtor has further determined that there are no amounts due and owing to Dr. Parizi for any claims. As a result of the foregoing, Dr. Parizi has no claims or setoff rights arising under Claim No. 90, and the Debtor has no liability for Claim No. 90.

25.     **Rategh, Ph.D. Hamid – Claim No. 44**: Hamid Rategh, Ph.D. ("Dr. Rategh") asserts a claim in the amount of at least $365,896.88 for severance, including interest and attorneys' fees. The claim asserts $15,150 of such amount as a priority claim pursuant to section 507(a)(4) of the Bankruptcy Code, $13,037.28 as a priority claim pursuant to section 507(a)(5) of the Bankruptcy Code, and all remaining amounts as a general unsecured claim. With respect to the severance claim, the Debtor disputes the validity of any underlying employment and severance agreements giving rise to such claims because, based upon a review of the Debtor's books and records, the Debtor believes that such documents were improperly authorized, documented and executed. To the extent that such agreements were valid (they are not), Dr. Rategh has breached both the employment agreement and severance agreements by violating their non-disparagement and adverse actions provisions, as applicable. Finally, Dr. Rategh is not entitled to interest and attorneys' fees arising from his purported severance claims because (i) the underlying agreement giving rise to such purported claims is invalid, and (ii) there is no agreement, including the purported employment and severance agreements, or applicable law entitling him to such claims. Accordingly, the Debtor has no liability for Claim No. 44.

26. **The Anahita KP Trust or the Goldman Sachs Trust Company of Delaware as Trustee of the Anahita KP Trust – Claim No. 98**: The Anahita KP Trust or The Goldman Sachs Trust Company of Delaware as Trustee of the Anahita KP Trust (the "KP Trust") asserts a general unsecured claim in the amount of at least $10,000,000 for, among other things, a stock purchase and transfer agreement, services performed, intellectual property rights and other contracts. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. Dr. Parizi is the grantor of the KP Trust, and Claim No. 98 is duplicative of the claims filed by Dr. Parizi. As set forth in the Debtor's First Omnibus Objection, no less than $11,700,000 relating to Claim No. 98 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. In addition, Claim No. 98 does not attach any documentation supporting its claims for services, intellectual property rights and other contracts, and the Debtor is not aware of the existence of any valid agreements substantiating any such claims. Further, after a review of its books and records, the Debtor has determined that there are no amounts due and owing to the KP Trust for any claims. As a result of the foregoing, the KP Trust has no claims or setoff rights arising under Claim No. 98, and the Debtor has no liability for Claim No. 98.

27. **The Cyrus the Great Trust – Claim No. 96**: The Cyrus the Great Trust (the "Cyrus Trust") asserts a general unsecured claim in the amount of at least $10,000,000 for, among other things, a stock purchase and transfer agreement, services performed, intellectual property rights and other contracts. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. Dr. Esfandyarpour is the grantor of the Cyrus Trust, and Claim No. 96 is duplicative of the claims filed by Dr. Esfandyarpour. As set forth in the Debtor's First Omnibus Objection, no less than $15,462,263 relating to Claim No. 96 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. In addition, Claim No. 96 does not

attach any documentation supporting its claims for services, intellectual property rights and other contracts, and the Debtor is not aware of the existence of any valid agreements substantiating any such claims. Further, after a review of its books and records, the Debtor has determined that there are no amounts due and owing to the Cyrus Trust for any claims. As a result of the foregoing, the Cyrus Trust has no claims or setoff rights arising under Claim No. 96, and the Debtor has no liability for Claim No. 96.

28. **The Venus the Great Trust – Claim No. 95**: The Venus The Great Trust (the "Venus Trust") asserts a general unsecured claim in the amount of at least $10,000,000 for, among other things, a stock purchase and transfer agreement, services performed, intellectual property rights and other contracts. The claim is purportedly secured through purported setoff rights, but the claim is not otherwise secured. Dr. Parizi is the grantor of the Venus Trust, and Claim No. 102 is duplicative of the claims filed by Dr. Parizi. As set forth in the Debtor's First Omnibus Objection, no less than $15,462,263 relating to Claim No. 95 is asserted for an equity interest, which is not a claim under the Bankruptcy Code. In addition, Claim No. 95 does not attach any documentation supporting its claims for services, intellectual property rights and other contracts, and the Debtor is not aware of the existence of any valid agreements substantiating any such claims. Further, after a review of its books and records, the Debtor has determined that there are no amounts due and owing to the Venus Trust for any claims. As a result of the foregoing, the Venus Trust has no claims or setoff rights arising under Claim No. 95, and the Debtor has no liability for Claim No. 95.

29. Based on the foregoing, I believe that the No Liability Claims should be disallowed and expunged as detailed on Schedule 2 attached to the Proposed Order because the Debtor is not liable for such Claims. Failure to disallow and expunge the No liability Claims would lead to an

inaccurate claims register and provide the claimants with an unwarranted recovery. As such, I believe the disallowance and expungement of the No liability Claims on the terms set forth in the Objection is appropriate.

30. I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 6, 2022  /s/ Dana Moss
       Arlington, Virginia  Dana Moss